THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* MILTON GRAF, Alias " MIMI " GRAF, Appellant.

First Department, January 17, 1941.

*Louis Waldman* of counsel [*Solomon Jacobson* with him on the brief], for the appellant.

*Manuel Lee Robbins* of counsel [*Stanley H. Fuld* with him on the brief; *Thomas E. Dewey, District Attorney*], for the respondent.

CALLAHAN, J. The defendant, who has been convicted of a violation of subdivision 1 of section 439 of the Penal Law, appeals from the judgment of conviction. Among various grounds urged by him for reversing the judgment are the following: (1) that the information filed herein failed to state facts sufficient to constitute a crime under the section referred to, because that section applied only to agents or servants of employers engaged in business for profit, and not to defendant, who was an official of a labor union,

and (2) that the evidence adduced was insufficient to sustain the verdict of conviction.

We find that the judgment should be reversed and the information dismissed upon both grounds indicated.

The information herein, following the language of the pertinent section, charges that the defendant between December 18, 1937, and December 28, 1938, was an agent, employee and servant of the Sheet Metal Workers International Association, Local No. 137, of the American Federation of Labor, as a delegate for said union; that he did between said dates, without the knowledge and consent of his employer, request and accept gratuities from the Artkraft Strauss Sign Corp., a New York corporation, under an agreement and with the understanding that he would "act in a particular manner in relation to his principal's, employer's and master's business, in that said defendant undertook and agreed to act favorably toward said Artkraft Strauss Sign Corp., in its relations with the union and more particularly to permit the said corporation to retain as its employees particular members of the union desired by said corporation, and in that defendant undertook and agreed to claim for the benefit of the said corporation jurisdiction by said union against other unions."

It may be noted that the statute involves the receipt or acceptance of gratutities by an agent under an agreement to act in some particular manner in relation to the principal's business.

Section 439 is found in article 40 of the Penal Law, which article relates to " Business and Trade." The sections contained in the article relate to the prohibition of various acts deemed by the Legislature harmful to proper conduct of trade. Among these are such matters as the sales of food and other merchandise, and various steps in the transaction of trade and business ordinarily conducted for profit. A labor union is not engaged in trade or business as such, but is a combination of workmen for the purpose of securing by united action favorable conditions as regards wages, hours and terms of employment. (*Auburn Draying Company* v. *Wardell,* 227 N. Y. 1.) Section 439 refers to the employer's " business," and it seems clear that it was not intended to refer to an organization such as a labor union. This view is further borne out by a consideration of the history of section 439. It was adopted in 1905 as section 384-r of the Penal Code. In 1904 the Legislature adopted section 447-f of the Penal Code, now section 380 of the Penal Law, which relates to payment of moneys to representatives of labor organizations. This section is part of article 34 relating to " Bribery and Corruption." Though section

380 prohibits only the giving of a bribe to a representative of a labor union, and does not deal with the bribe taker, both statutes relate to gratuities to agents. If the Legislature intended to make the receipt of a gratuity by a labor representative a crime, it would seem likely that it would do so by a simple amendment inserting such a provision in section 380, and not rely on a general statute relating to " Business and Trade " to create such prohibition.

But, even if we were to assume that section 439 might be construed as sufficiently comprehensive to include an employee of a labor union, and that the " business " referred to in the section was intended to include the affairs of such a union, we think that the conviction of defendant was unwarranted for failure to prove the crime charged beyond a reasonable doubt. The principal witness for the People was one Starr, the treasurer of the Artkraft Strauss Sign Corp. He testified that members of Local No. 137 were employed in manufacturing and erecting the signs of said company. The company desired to use the members of this union in connection with work in cities outside of New York. In many such cases jurisdictional disputes arose, other unions claiming the right to do the work. When these disputes occurred the defendant was requested to travel to such other cities in order to prevent outside unions from obtaining control of the labor. In so doing he was furthering not only the interests of the sign company, but those of his own union, which desired to retain jurisdiction so as to get work for its members. Local No. 137 was unwilling to bear the expense of defendant on these trips, though it did pay his expenses when he traveled solely in the interests of the union. Accordingly, it was agreed between Starr and defendant that the sign company would pay defendant's expenses. This arrangement was not divulged to the other officers of the union. In accordance with this promise, defendant upon his return from the trips advised Starr of the amount of his traveling expenses, and the sign company thereupon reimbursed him to the extent of the payments set forth in the information. The only other items involved were two sums given to the defendant as alleged Christmas presents in the years involved. Apparently it is conceded that these gifts would not sustain the conviction. Clearly they would not do so, for there is no proof to show they were given to effect either of the purposes mentioned in the information.

The People contend that the trial court was not required to accept the statement of their own witness Starr as to the purposes for which the moneys paid were given; that the triers of the facts could determine that his explanation of the payments was false, and could reject that part of his testimony without rejecting all

of it. They point to the fact that the money was paid in cash, or by cashed checks which did not bear defendant's indorsements; that the alleged traveling expenses of defendant were not required to be itemized, and that the payment of expenses was entered in the books of the sign company by entries calculated to conceal the true purpose of the payments. They also point out that the union officers had no knowledge of the payments by the sign company, and that at least on some occasions the union itself paid traveling expenses to defendant.

While we recognize the right of the triers of the facts to accept as credible part of a witness' testimony, and, at the same time, reject as incredible other parts thereof, such rule does not dispense with the requirement that all elements of the crime charged must be supported by credible proof. It will be remembered that the statute involved here prohibited the acceptance of a gratuity under an agreement or understanding that the recipient would " act in any particular manner " in relation to his principal's business. Assuming, therefore, that the trial court might disbelieve Starr as to the purposes for which the moneys were paid, the rejection of this testimony would not supply any affirmative proof as to the particular manner in which the defendant would act in relation to his employer's business. The necessity of pleading and proving this element of the crime was recognized by the People. To meet this requirement it was charged in the information that the defendant agreed to act favorably toward the sign company in its relations to the union in two ways: (a) to permit the company to retain certain employees of the union which it desired to keep, and (b) to claim for the benefit of the sign company jurisdiction by Local No. 137 as against other unions. No attempt was made to prove the first of these alleged objectives. In so far as the proof established any agreement with respect to the second alleged objective, it is undisputed that the action taken by the defendant was favorable to the union as well as to the sign company, and that the defendant was directed by Local No. 137 to take the trips to the out of town cities to secure jurisdiction for it. Concededly, therefore, defendant acted favorably to the interests of the union, and did everything that he did at the union's behest, although the interests of the sign company might also have been served thereby.

We think that " particular manner," as used in the statute, was intended to mean a particular manner which would serve the purpose of the donor of the money rather than that of the employer, and that the money was given and accepted with the intention to affect some decision by the employee involving exercise of

discretion on his part with respect to his employer's interest. The section is entitled, " Corrupt influencing of agents, employees or servants." We think that it requires proof of payment of money to influence an agent in a way inconsistent with his duties towards his employer. In any event, the statute is clearly limited to the giving of a gratuity, and not to the return of expenditures incurred in serving both the donor and the defendant's employer in accordance with the latter's instructions. If the moneys paid to defendant were for any unlawful purpose and not for the purpose testified to by Starr, the People were required to establish that purpose by direct or circumstantial proof. There being no such proof found in the record, we are required to reverse the judgment of conviction and dismiss the information.

Under the circumstances, we see no necessity of discussing the remaining grounds upon which the appellant urges reversal.

The judgment should be reversed, the information dismissed and the defendant discharged from custody.

TOWNLEY, GLENNON and DORE, JJ., concur; MARTIN, P. J., concurs in result on the sole ground that the evidence was insufficient to sustain the judgment of conviction.

Judgment unanimously reversed, the information dismissed and defendant discharged from custody.