## VAN HORN v. LEWIS et al.
### Civil Action No. 1651—48.

District Court of the United States for the District of Columbia.

June 23, 1948.

Frank G. Smith, of Clearfield, Pa., and John Lord O'Brian, Charles A. Horsky, and Alan C. Maxwell, all of Washington, D. C., for petitioner.

Walter M. Bastian, A. K. Shipe, Welly K. Hopkins, and Harrison Combs, all of Washington, D. C., for defendants.

GOLDSBOROUGH, Justice (Orally).

In this case the trustee, Van Horn, sues trustees Lewis and Bridges, and in the important matters which are involved the

question is as to whether or not the trustee, Van Horn, has to concur in the detailed basis upon which pension payments are to be made. And also objection is made that the pension fund cannot be paid for those who were not employees of the operators when the Bituminous Coal Agreement was entered into in 1947, and also cannot be paid to those who were not employees of the operators at any time.

As I remember it, those were the two important questions.

I don't think there is any great difficulty in making an analysis of the situation. Assuming, for the sake of argument, that subsection (B) of section (c) of Title 29 U.S.C.A. § 186 is not only an exception but a limitation, the Court is of the opinion that the Bituminous Wage Agreement of 1947 is in no way violative of that provision.

The provision says that, "The detailed basis on which such payments are to be made is specified in a written agreement with the employer."

The Bituminous Wage Agreement of 1947 was an agreement with the employers, and it states specifically, "It is further agreed that the detailed basis upon which payments from the fund will be made shall be resolved in writing by the aforesaid trustees at their initial meeting, or at the earliest practicable date that may be by them thereafter agreed upon."

Now, the operators elected that the detailed basis should be worked out in that way. So the Court thinks that Section 186 was literally complied with. In other words, the payment shall be made as specified in a written agreement with the employer. And the employer specified that they should be made by this Board of Trustees, all three of them. And when I say all three of them I mean there should be no difference between the power and the duties of any of the three trustees.

The agreement also states that: "The operators signatory hereto do hereby appoint Ezra Van Horn of Cleveland, Ohio, as their representative on said Board of Trustees. The United Mine Workers of America do hereby appoint John L. Lewis of Washington, D. C., as its representative on the Board of Trustees.

"It is further stipulated and agreed by the joint contracting parties that the aforesaid two Trustees shall with all dispatch designate and name a third and neutral trustee. Said three trustees so named and designated shall constitute the Board of Trustees to administer the fund herein created."

That is, the operators agreed that these three trustees should work out the detailed basis and should also administer the fund.

Then, in the matter of actuarial basis, which is one of the difficulties contended for by the trustee Van Horn, he says the actuarial basis has not been worked out.

Well, what happened was this: These trustees, that is, the two trustees Van Horn and Lewis, and Murray who was then the third trustee, began to work on this thing last September, and I think in November they agreed on an actuary.

The results the actuary reached were not satisfactory to Lewis and there was another actuarial computation made which was not satisfactory.

And then a third actuary made his report, the actuary selected, I think, by Mr. Lewis; Latimer was his name. And he said that the actuarial basis was sound.

Now, of course, the Court knows from a rather long business experience that actuaries can reach very many different conclusions if they want to reach them.

I once knew of an insurance actuary, a rather famous one, who claimed he could reach any conclusion you asked him to reach.

So that in April of 1948, when it was very necessary to administer this fund—the matter had become critical—the two trustees, Lewis and Van Horn, agreed upon Senator Bridges as the third trustee (Murray having previously resigned).

Now, the third trustee made a suggestion which was agreeable to the trustee Lewis, and this is what he said; this was the resolution which he offered and which was adopted by Lewis and by him.

"Be it further resolved, that a pension of $100 per month shall be paid, subject to amendment or modification at any time

as experience in the operation of the fund may dictate or require, to each eligible and qualified member of the United Mine Workers of America who on May 29, 1946, attained or thereafter attained the age of 62 years and who has served 20 years in the coal industry in the United States and who has retired from service in the bituminous coal industry in the United States on a date subsequent to May 28, 1946; that the effective date for the payment of pensions shall be as of the date that the member of the United Mine Workers of America has retired from the bituminous coal industry in the United States after attaining the age of 62 years and has served 20 years in the industry; but no member of the United Mine Workers of America shall be eligible or qualified for a pension in accordance with the foregoing who retired from the bituminous coal industry in the United States prior to May 29, 1946."

Now this is significant:

"Be it further resolved, that at the earliest practicable date following the adoption of this resolution there shall be formulated detailed rules and regulations subject to approval by the trustees, to effectuate the payment of said pensions upon the terms and conditions hereinabove specified and in conformity with reasonable and proper administration of said funds.

"Be it further resolved, that the trustees reserve the right to modify, include or amend the above terms and conditions at any time both as to the amount of pension payments and the qualifications for eligibility, together with the right to modify or amend the rules and regulations herein above provided for, as upon review by the trustees, experience obtained in the operation of the fund may require."

That resolution was adopted. The Court sees nothing about the resolution which is not in accordance with the Bituminous Wage Agreement, and Section 186 which we have discussed.

This was a new venture, and it was perfectly proper, within the limits of any sort or propriety, to adopt a tentative plan because the fund had to be administered.

The Court is asked to say that there is something about that plan which is so remote from the letter and spirit of the Bituminous Wage Agreement, and of the statute, Section 186, that the Court has a right and should interfere and prevent the adoption of the arrangement set forth in the resolution and voted for by two of the trustees.

Of course, the Court thinks, as I have indicated, that the arrangement was reasonable and proper, being easily within the power of the trustees to make.

One thing should be kept eternally in mind in this connection, and that is that this agreement was not made between the operators and the employees. It was made between the operators and the United Mine Workers of America, which is a very different proposition.

No employee of the operators who is not a member of the United Mine Workers of America receives any benefit whatever from this pension arrangement. The operators are required to pay ten cents a ton. This arrangement doesn't increase or decrease that amount by one iota, not in any way at all.

I think it is instructive to notice the language of a part of this section of the Bituminous Wage Agreement, entitled "United Mine Workers of America Welfare and Retirement Fund." It provides for "benefits on account of sickness, temporary disability, permanent disability, death or retirement." All of this is to be administered by the Trustees, you understand.

"Benefits for any and all other purposes which may be specified, provided for or permitted in Section 302(c) of the 'Labor-Management Relations Act, 1947,' as agreed upon from time to time by the Trustees, including the making of any or all of the foregoing benefits applicable to the individual members of the United Mine Workers of America and their dependents; and benefits for all other related welfare purposes as may be determined by the Trustees within the scope of the provisions of the aforesaid 'Labor-Management Relations Act, 1947.'"

"Subject to the stated purposes of this Fund, the Trustees shall have full authority, within the terms and provisions of the 'Labor-Management Relations Act, 1947,' and other applicable law, with respect to

questions of coverage and eligibility, priorities among classes of benefits, amounts of benefits, methods of providing or arranging for provisions for benefits, investment of trust funds, and all other related matters."

"The aforesaid Trustees shall designate a portion (which may be changed from time to time) of the payments herein provided, based upon proper actuarial computations, as a separate fund to be administered by the said Trustees herein described and to be used for providing for pensions or annuities for the members of the United Mine Workers of America or their families or dependents and such other persons as may be properly included as beneficiaries thereunder."

The Court, of course, has made a very thorough study of this whole situation, and the Court is unable to find anything which the Trustees, the majority of the Trustees have done up to the present time which is in any way improper, unbusinesslike, or not in accordance, as I have said before, with the letter and the spirit of the Labor Management Relations Act., 1947, 29 U.S.C.A. § 141 et seq., and also of the National Bituminous Wage Agreement of 1947.

Of course, in the future if any of the Trustees, the majority of any of the Trustees, should undertake to misuse the fund in such a way that it obviously would not be in accordance with the law, or with the Agreement, the Trustees will have a right to come into the Court and ask that the Trustees be directed how they should use the Fund.

But certainly, at this time, there is absolutely nothing, so far as the Court can see, which has been done that is improper and would justify or give the Court any power, except an arbitrary power, which of course is no power at all, to interfere with what has been done.

Now, in a fund of this kind, in addition to the fact that the Bituminous Wage Agreement of 1947, specifically gives each Trustee equal power both in the establishment of the Fund and its administration, it is a beneficial Fund, and the rules applicable to charitable trusts undoubtedly apply, and the majority of the Trustees have a right to act.

The Court doesn't think that that is debatable. I mean you could debate anything, of course, but the Court doesn't think it is worth debating. The Court doesn't think there is any doubt about it.

While what I am about to say may not have any direct relation to the issues, it seems to be proper. This tentative, purely tentative arrangement is that these miners have to work for twenty years in the mines and be 62 years old before they are eligible, and they only get $100 a month, provided the Fund will stand it.

The resolution which was adopted specifically says that that amount—and the eligibility rules—can be changed from time to time as matters work out, and as the proper administration of the fund is ascertained.

In view of the fact that this arrangement, this contract, was not made with the employees, but with the United Mine Workers, there seems to be nothing that shocks the mind at the idea that the members of the United Mine Workers who have worked for twenty years under the ground, and are 62 years old, and were employed on May 29, 1946, should get $100 a month pension.

Of course, if the Fund won't stand it, they will have to change it, but it is meager. It is just enough to keep them from being objects of charity in their old age; it is just enough to give them a little dignity; it is something to make them able to hold their heads up.

The Court doesn't think, gentlemen, that there is any justification in law or in sound reason for this petition, or complaint as it should be called.

The complaint, gentlemen, will have to be dismissed and summary judgment granted to the defendants.

### Findings of Fact.

This cause came on to be heard on the motions of the defendants and each of them to dismiss the complaint (petition) and for summary judgment, and on plaintiff's motion for summary judgment, and the Court having examined the pleadings, affidavits, exhibits, and all papers filed herein, and having heard argument of counsel for the parties, and being fully advised in the premises, finds:

1. This complaint, as amended, denominated petition, was filed by Trustee Ezra Van Horn seeking instructions, for Injunction, and for a Declaratory Judgment, relating to a trust fund entitled "United Mine Workers of America Welfare and Retirement Fund," created pursuant to the "National Bituminous Coal Wage Agreement of 1947" entered into between certain coal operators and the United Mine Workers of America on July 8, 1947. Said Agreement, attached to the complaint herein as Exhibit "A," is incorporated in these findings as if fully set out herein.

2. The United Mine Workers of America Welfare and Retirement Fund is contained as one of the provisions in the aforesaid National Bituminous Coal Wage Agreement of 1947. Ezra Van Horn and John L. Lewis were named in the aforementioned Agreement as Trustees of the said Fund and they, pursuant to the said Agreement, named a third Trustee, Thomas E. Murray. On January 16, 1948, Thomas E. Murray submitted his resignation as Trustee, which resignation was formally accepted by the Board of Trustees on January 31, 1948.

3. On April 10, 1948, Styles Bridges was agreed upon as the third Trustee by Trustees Van Horn and Lewis, to succeed Murray.

4. The Fund comprising the Trust is created by payment by the Operators signatory to the Agreement of ten cents (10¢) per ton on each ton of bituminous coal produced by them, and that Fund is in excess of $40,000,000 as of this date. No part of the Fund has been used for any purpose.

5. On April 12, 1948, Trustee Bridges submitted to the Board of Trustees a plan for activation of the Trust. His plan was adopted by the majority of the Trustees, Mr. Van Horn dissenting.

In substance, the plan provided for pensions of $100 a month to be paid to the eligible and qualified members of the United Mine Workers of America who on May 29, 1946, or thereafter, attained the age of 62 years and who had served 20 years in the coal industry in the United States, and who had retired from service in the bituminous coal industry on a date subsequent to May 28, 1946. The plan provides that it is subject to amendment or modification at any time as experience in the operation of the Fund may dictate or require.

It further provides that at the earliest practicable date following the adoption of the resolution there shall be formulated detailed rules and regulations, subject to approval by the Trustees, to effectuate payment of said pensions upon the terms and conditions specified therein and in conformity with reasonable and proper administration of the Fund.

Further, the Trustees reserve the right to modify or amend the terms and conditions in the plan at any time, both as to the amount of pension payments and qualifications for eligibility, together with the right to modify or amend the rules and regulations mentioned in the plan, as upon review by the Trustees and experience obtained in the operation of the Fund might require. Said plan is attached to the complaint herein as Exhibit "B," as is the statement explaining the plan made by Senator Bridges at the time the plan was adopted and incorporated in the Minutes of the Trustees attached to the complaint herein as Exhibit "C."

6. There have been three differing actuarial reports submitted to the Trustees since November, 1947, none of which met with the approval of all of the Trustees.

### Conclusions of Law.

The Court's conclusions of law are as follows:

1. The Welfare and Retirement provisions of the National Bituminous Coal Wage Agreement of 1947, made between the operators signatory thereto and the United Mine Workers of America, do not violate either the letter or spirit of the Labor Management Relations Act, 1947.

2. The United Mine Workers of America Welfare and Retirement Fund, set up in said Agreement, constitutes a beneficial charitable trust, and a majority of the Trustees have the right to act in the activation and administration of that Trust.

3. The Trust Agreement as set out in the National Bituminous Wage

546

Agreement of 1947 provides for payments of benefits to the members of the United Mine Workers of America.

4. The Trustees Bridges and Lewis acted properly in adopting the resolution or plan of Trustee Bridges for activation and administration of this Trust Fund, and the said resolution or plan is in all respects proper, businesslike, lawful, and within the letter and spirit of the Labor Management Relations Act, 1947 and the National Bituminous Coal Wage Agreement of 1947.

5. The acts of Trustees Bridges and Lewis as disclosed by the records and minutes of the Trustees filed herein were and are in all respects proper, business-like and in accordance with both the letter and spirit of both the said Labor Management Relations Act, 1947 and the National Bituminous Coal Wage Agreement of 1947, and the Court therefore has no power to interfere with such acts of the Trustees.

6. The petition (complaint) states no cause of action upon which relief can be granted the plaintiff, and the motions of the defendants and each of them to dismiss the complaint, herein denominated petition, should be and they are hereby granted, and the motions of defendants and each of them for summary judgment should be and they are hereby granted.

7. The motion of the plaintiff for summary judgment should be and it is hereby denied.