## UNITED GARMENT WORKERS OF AMERICA, LOCAL UNION NO. 140 AND NO. 75 v. JACOB REED'S SONS et al.

### No. 8954.

District Court, E. D. Pennsylvania.
Jan. 17, 1949.

50

William Vincent Mullin, of Philadelphia, Pa., for plaintiff.

Francis W. Sullivan (of Strong, Sullivan, Saylor & Ferguson), of Philadelphia, Pa., for defendants.

HENDERSON, District Judge.

This action was brought in the District Court of the United States for the Eastern District of Pennsylvania, summons being issued on October 20, 1948, by the United Garment Workers of America, Local Union No. 140 and No. 75 against Jacob Reed's Sons, S. Abrahams & Co., and Weintraub Bros. & Co., all of Philadelphia and State of Pennsylvania, within the jurisdiction of this Court. Complaint and answer were duly filed and the matter came on for hearing at Philadelphia before this Court at the December Term U. S. District Court, 1948. The relief sought by the plaintiffs is for declaratory judgment upon a contract between the plaintiffs and the defendants, copy of which was attached to the complaint, and particularly to have paragraph five of said contract declared to be valid and legal. The defendants admitted the execution of the contract and agreed that the said contract was satisfactory to them provided that paragraph five of said contract is valid and in accordance with law. The contract was made between the plaintiffs and the defendants for the purpose of setting up a fund to be known as "Retirement Fund, Local Unions No. 140 and No. 75, United Garment Workers of America". The defendants agreed to contribute weekly 3% of said payrolls to provide said retirement fund for the members of said Unions who are in their employment. This fund is to be administered by trustees, as provided in said agreement. Members of the Fund shall be eligible to apply for payment of moneys due him or her therefrom when he or she retires from the trade, and shall be entitled to receive the exact amount contributed to their credit by the employers.

The moneys in this Fund and all payments into this Fund are to be deposited in the Philadelphia National Bank, under the title of "Retirement Fund, Local Unions No. 140 and No. 75, United Garment Workers of America". Moneys in the Fund not required for immediate use are to be invested in United States Government Bonds.

The contract provides, among other things, as follows:

"Disbursements from the Fund shall be restricted to Retirement payments only.

"5. The trustees of this Fund are authorized to invest moneys out of the said fund in loans to members, who for adequate reason have shown desire to borrow

up to $300.00 in any one year out of said Fund, but such amount shall not exceed the share of the borrower in the Retirement Fund, said loans to bear interest at 4%, and shall be repaid to the Fund on a weekly basis, in such amount, so that the loan shall be repaid within one year. Failure of the borrower to repay the loan as agreed will disqualify the borrower from future loans and the amount of the loan remaining unpaid, plus accrued interest will be charged against said member's interest in the Retirement Fund, but this is not to be construed as a waiver of other lawful methods of collection. The Board of Trustees shall have full authority and discretion as to the acceptance or rejection of applications for loans, being especially guided by ability of applicants to repay said loans. The operation of the provisions of this paragraph shall be suspended at option of employers because of the uncertainty of its legality under the provisions of Section 302(c) (5) of the 'Labor Management Relations Act, 1947' [29 U.S. C.A. § 186(c) (5)], pending the decision of the United States District Court for the Eastern District of Pennsylvania, in Declaratory Judgment proceedings wherein the parties hereto agree to submit the question for judicial determination. In the event of an adverse decision as to its legality, the said provision shall be deemed null and void."

The contract also provides as follows:

"12. Section 302(c) (5) of the Labor Management Relations Act of 1947 is incorporated by reference as an integral part of this agreement, so long as the same shall be law."

The controversy involved in this proceeding is the validity of paragraph 5 of Exhibit A, which authorizes the trustees of the Retirement Fund to invest part of the principal of the Fund in loans to members up to the sum of $300 in any one year, under the terms and conditions set forth in said paragraph 5 of Exhibit A, as herein quoted. Under the terms of said provision, it is provided that the operation of the paragraph shall be suspended at the option of the employers because of the uncertainty of its legality under the provisions of Section 302(c) (5) of the Labor Management Relations Act, 1947, pending the decision of the United States District Court for the Eastern District of Pennsylvania, in declaratory judgment proceedings wherein the parties hereto agree to submit a question for judicial determination.

The defendants contend that the provisions in paragraph five of the contract providing for loans to members is invalid, under Section 302(c) (5) of the Labor Management Relations Act, 1947, generally known as the Taft-Hartley Act.

The plaintiffs contend that said provision is not invalid.

The nature of the complaint is a proceeding under 28 U.S.C.A. §§ 2201, 2202, for the purpose of determining a question in actual controversy between the parties, to-wit, the validity of a written contract, more particularly paragraph five of said contract.

At the trial the plaintiff made a motion for judgment on the pleadings.

The question of law involved is as follows:

Does Section 302(c) (5) of the Labor Management Relations Act, 1947, known as the Taft-Hartley Act, permit the making of personal loans to employees from the moneys in a Retirement Fund established by agreement between an employer and a Labor Union for the benefit of employees who are members of the union? In other words, is the investment of a part of the principal of the Retirement Fund in small loans to parties interested in said Fund, with adequate provisions for repayment, and full discretion in the trustees as to making such loans, a violation of the Taft-Hartley Act?

Among other things, paragraph five of the contract authorizes the trustees of the Retirement Fund to invest moneys out of said Fund in loans to members who for adequate reason have shown desire to borrow up to $300.00 in any one year out of said Fund, but such amount not to exceed the share of the borrower in the Retirement Fund, said loans to bear interest at 4%, and to be repaid on a weekly basis in such amount so that the loan shall be repaid within one year. If the borrower fails to repay the loan as agreed, he or she

is disqualified from making future loans, and the amount of the loan unpaid, plus accrued interest, shall be charged against the member's interest in the Retirement Fund, but this is not to be construed as a waiver of other lawful methods of collection.

■ Under the facts and circumstances in this particular case, the Court is of the opinion that the contract between the plaintiffs and the defendants is a valid one, and that paragraph five of said contracts submitted especially to the Court for judicial determination, is valid, legal, and binding upon the parties to said contract, and that the Trustees under said contract have the right in their own discretion to make such loans as provided therein to the members of the Union having an interest in the same, as provided therein.

■■ It appears to be the general rule that it is the duty of a trustee to invest funds entrusted to him if it is practicable to do so. 65 C.J. p. 795, par. 672. I find nothing in Section 302 which limits or otherwise regulates the making of loans of trust funds. That Congress contemplated the making of loans from the fund appears to be clear from the language of the section in question, the pertinent part of which reads as follows: *"Provided, That (A) such payments are held in trust for the purpose of paying, either from principal or income or both, * * *."* (Italics supplied.) Obviously, the making of payments from income contemplates that the money which is in the fund will earn a return.

■ Loans from trust funds to members would not be payments to members. The term "payment" used in this section does not mean a loan. It is rather a settlement of a lawful claim which the member has against the fund created by the trust agreement and represents an annuity, pension or other form of benefit. Such payments are to be distinguished from loans. The loaning of money from the fund is simply a contractual arrangement

brought about in the course of the prudent administration of the fund, with a view to making the fund productive and does not represent any settlement of a claim which a member may have against the fund.

A careful examination of Section 302 does not disclose any reason for denying to members the right to obtain these loans if the trustees consider such loans both prudent and safe. Therefore, it seems that the provisions of paragraph 5 of the proposed contract is consistent with Section 302 of the Act.

The Court sees no preclusion in law or spirit of law to using retirement funds to make loans to Union members, provided the trustees use their own good discretion in making the same, as provided in paragraph 5 of the contract between the parties to this action. In fact, the parties to said contract are agreeable to all the terms of the same, provided it is lawful to make such loans to the interested members, as therein set out.

■ This is somewhat a new question, and in determining the contract, including paragraph 5, to be valid, the Court does not want to be understood as having set a precedent for other similar contracts. Each contract will have to stand on its own terms and conditions, because such a privilege could be easily abused. Certainly it would not be within the law for trustees to permit the interested members to destroy such trust funds to the end that when a retirement should be available, the member would have already used and made way with the funds, and, therefore, the purpose of the law would be vitiated. The Court considers such funds as rather sacred, and it is the purpose of the law that they be available when due under the contract. It is a fine thing for a member to have set up and available when the retirement age comes a fund which will be both helpful and necessary.

Findings and Decree will be prepared by counsel for plaintiff and presented to the Court.