**UPHOLSTERERS' INTERNATIONAL UN-ION OF NORTH AMERICA v. LEATH-ERCRAFT FURNITURE COMPANY et al. (UNITED STATES, Third-Party De-fendant).**

**Clv. A. No. 8744.**

United States District Court
E. D. Pennsylvania.

Feb. 8, 1949.

M. H. Goldstein, of Philadelphia, Pa., Franklin D. Roosevelt, Jr., of New York City, and Haskell Golder, of Philadelphia, Pa., for plaintiff.

Joseph Ominsky, of Philadelphia, Pa., for defendant.

Samuel K. Abrams, of Washington, D. C., Harry Wolov, Asst. U. S. Atty. and Gerald A. Gleeson, U.S. Atty., both of Philadelphia, Pa., for third-party defendant.

GANEY, District Judge.

This case arises upon plaintiff's motion for judgment on the pleadings and for summary judgment pursuant to Rules 12 (c) and 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A., in an action for a declaratory judgment pursuant to Title 28 U.S.C.A. § 2201.

The judgment sought is one declaring that the defendant is obligated, by virtue of the terms of a supplemental agreement between the parties, to make certain money payments which it has failed and refused to make, since July 1, 1948, to plaintiff's Social Security Department. Jurisdiction of this court is based on Sec. 301(a, c) of the Labor-Management Relations Act.[1]

Plaintiff is an international labor union. Its many thousand members throughout the United States and Canada are grouped, for administrative purposes, into local unions. It is the certified bargaining representative for a group of defendants' employees, a number of whom are members of plaintiff. Defendant is a corporation engaged in the business of manufacturing upholstered furniture in interstate commerce.

The complaint, the answer to which admitted all the allegations therein, reveals the following facts: On or about May 17, 1944, a convention of representatives of plaintiff's members, by resolution, amended plaintiff's constitution, pursuant to which they were acting. This resolution, among other things, provided for the adoption "as a national policy the establishment of a Social Security Program covering benefit payments in the event of accidental death, lesser accident, illness or dismemberment, and further providing for the payment of medical, surgical and hospital benefits". The resolution stipulated that the program was to be effectuated by means of collective bargaining agreements providing for the payment of the cost of furnishing such benefits by the employer-parties to such agreements and that plaintiff's General Executive Board was to act as a Board of Trustees to receive and administer the fund resulting from the con-

---

[1] Act of June 23, 1947, c. 120, Title III, 61 Stat. 136, 156, 29 U.S.C.A. § 141 et seq., 29 U.S.C.A. § 185(a, c), commonly referred to as the Taft-Hartley Act.

tributions made by the employer-parties under such collective bargaining agreements. On December 31, 1945, there were in effect nine hundred twenty one collective bargaining agreements as modified by a standard form supplemental agreement, the pertinent parts of which are set forth in the footnote [2], between plaintiff and nine hundred twenty one employers engaged in interstate commerce.

Under the terms of these agreements, as supplemented, the employer-parties have made monthly contributions in the stipulated amount to plaintiff's Social Security Department. Plaintiff's General Executive Board, acting as a Board of Trustees, have, from time to time, adopted by-laws and regulations governing the disposition of the fund. Benefits for the employee-members are insured by means of a blanket coverage policy or policies obtained from an insurance company, the premiums for which are paid from the fund. Until recently, a portion of the fund had been set aside for death benefits. But that fund has been displaced by the purchase of a group life insurance policy, which may be renewed annually. The Board of Trustees administer the fund exclusively; the extent and the conditions precedent for the receipt of benefits are determined by the provisions set forth in the policies and the by-laws and regulations promulgated by the Board of Trustees. Neither the employee-members of plaintiff, except through plaintiff, nor the employer-parties have any representation in the fund's administration.

On January 14, 1946, plaintiff, acting through one of its local unions,[3] entered into a collective bargaining contract, which is presently in effect, with defendant, governing the terms and conditions of employment of the latter's employees. Prior to that date, it had no contractual relations with plaintiff. On May 23, 1946, the principal contract was supplemented by the usual standard form supplemental agreement [4], by the terms of which it agreed to make monthly contributions to plaintiff's

[2] "Whereas, the Union has established a Social Security Fund, for the purpose of maintaining a Social Security Program under which its members may be entitled to receive the following benefits under the provisions hereinafter set forth: (a) Accident benefits; (b) Dismemberment benefits; (c) Death benefits; (d) Sick benefits; (e) Medical benefits; (f) Surgical benefits; (g) Hospital benefits; and * * *

"Now, therefore, in consideration of the mutual covenants and agreements herein contained and contained in the principal agreement, the parties hereto do hereby agree as follows:

"The Employer hereby agrees to pay to the Upholsterers' International Union Social Security Department, each and every month, in advance, between the first and fifth day of every month, Beginning with —— 19——; a sum equalling three per cent of the gross wages earned by his employee-members of this Union. * * *

"The above described sum of three per cent shall be paid by the Employer as a contribution to the Social Security Fund of the Upholsterers' International Union of North America above described. In consideration for the payment of said contribution, the Union agrees to extend, beginning the same date the employer's first contribution is due as set forth in the preceding paragraph, the benefits of said fund to said employee-members, in accordance with the rules and by-laws under which said fund is administered, and in accordance with the general laws of the International.

"The Union has contracted or will contract for the issuance of a blanket coverage insurance policy or policies to provide for the payment of the various benefits as herein provided; * * * It is agreed that the premiums for the maintenance of a group policy or policies on behalf of the employee-members shall be paid out of the periodic contributions paid by the Employer above described. The rights and duties of all parties, including the Union, the Employer and the employee-members, shall be governed by the provisions of said blanket coverage policy.

"The Union agrees that the program of Social Security benefits hereinabove described shall be maintained in full force and effect for the entire period of time during which this Supplemental Agreement is in effect and the terms hereof fully complied with in all respects by the Employer. * * * *"

[3] Upholsterers' and Frameworkers Union, Local No. 77.

[4] See Note 3, supra.

Social Security Department of three per cent of the gross wages earned by all the employees of defendant who were members of plaintiff. Since July 1, 1948, despite the terms of the supplemental agreement, defendant has refused to contribute to plaintiff's Social Security Department [5].

In general defendant contends that Section 302 [6] of the Act, 29 U.S.C.A. § 186, makes it unlawful, after July 1, 1948, for it to contribute to plaintiff's fund because it is not a trust fund within the meaning of that section. More specifically it points out that employees and employers are not represented in the administration of the fund as required by Sec. 302(c) (5) (B). It asserts that Sec. 302(g), which excuses compliance with Sec. 302(c) (5) (B), does not apply in the instant case for the contract by which it agreed to make contributions to the fund was entered into subsequent to January 1, 1946. And even assuming that the latter assertion is without legal basis, it still maintains that Sec. 302(g) is inapplicable for the fund is not

"otherwise lawful" because (a) plaintiff's by-laws and regulations do not provide for benefits for all of its (defendant's) employees, and (b) the fund has not been established "for the sole and exclusive benefit of the employees" whether or not the word "employees" means all of its employees or just the employees who are members of plaintiff. In addition, in its opinion, the "employees" cannot seek the aid of the courts to prevent the Board of Trustees, which it claims has unbridled power over the fund, from using it for purposes other than those set forth in the Act.

In support of its motion the plaintiff maintains that the fund in question meets all the requirements of 302(c) (5) up to the proviso clause and (A) of the proviso clause, and that the composition of the members of the trustees need not comply with Sec. 302(c) (5) (B) because of Sec. 302(g). But it also argues that if Sec. 302(g) is not applicable in the instant case, the provision of Sec. 302(c) (5) (B) re-

---

[5] As of the date of the filing of the complaint, there were in effect 1,089 such agreements affecting 16,185 of plaintiff's members.

[6] The relevant provisions of this section set forth:

"(a) It shall be unlawful for any employer to pay or deliver, or to agree to pay or deliver, any money or other thing of value to any representative of any of his employees who are employed in an industry affecting (interstate) commerce. * * *

"(c) The provisions of this section shall not be applicable * * * (5) with respect to money or other thing of value paid to a trust fund established by such representative, for the sole and exclusive benefit of the employees of such employer, and their families and dependents (or of such employees, families, and dependents jointly with the employees of other employers making similar payments, and their families and dependents): Provided, That (A) such payments are held in trust for the purpose of paying, either from principal or income or both, for the benefit of employees, their families and dependents, for medical or hospital care, * * * compensation for injuries or illness resulting from occupational activity or insurance to provide any of the foregoing, or unem-

ployment benefits or life insurance, disability and sickness insurance, or accident insurance; (B) the detailed basis on which such payments are to be made is specified in a written agreement with the employer, and employees and employers are equally represented in the administration of such fund, * * * and shall also contain provisions for an annual audit of the trust fund, a statement of the results of which shall be available for inspection by interested persons at the principal office of the trust fund and at such other places as may be designated in such written agreement; * * *

"(d) Any person who willfully violates any of the provisions of this section shall, upon conviction thereof, be guilty of a misdemeanor and be subject to a fine of not more than $10,000 or to imprisonment for not more than one year, or both. * * *

"(f) This section shall not apply to any contract in force on June 23, 1947, until the expiration of such contract, or until July 1, 1948, which ever first occurs.

"(g) Compliance with the restrictions contained in subsection (c) (5) (B) of this section upon contributions to trust funds, otherwise lawful, shall not be applicable to contributions to such trust funds established by collective agreement prior to January 1, 1946 * * * *".

quiring equal representation in the administration of the fund by the employees and employer is unconstitutional [7] for two reasons: First, such a provision, if complied with, would deprive it and its members of liberty and property without due process of law in violation of the Fifth Amendment. And second, such a requirement is beyond the power of Congress to impose.

■ Plaintiff does not deny that the employees and employer are not equally represented in the administration of the fund. Section 302(g), upon the interpretation of which the parties differ, provides: "(g) Compliance with the restrictions contained in subsection (c) (5) (B) of this section upon contributions to trust funds, otherwise lawful, shall not be applicable to contributions to such trust funds established by collective agreement prior to January 1, 1946 * * *." Defendant would have us read this subsection as requiring that the contributions shall have been made prior to January 1, 1946 before the subsection is applicable. Grammer, the customary usage of words, common sense and the legislative history of the Act all require the interpretation that it is the trust fund to which contributions are made, not the making of contributions thereto, which must be established prior to the critical date. So long as the trust fund existed, as here, prior to January 1, 1946, contributing to that fund pursuant to an agreement made subsequent to that date will not, on that account, constitute a violation of the Act. In the Application of Baker, Sup.1948, 194 Misc. 51, 85 N.Y. S.2d 193. Also see In the Application of Feller, Sup.1948, —— Misc. ——, 82 N.Y.S. 2d 852.

■ Although Sec. 302(c) (5) speaks of "the employees of [the] employer," it does not mean all the employees of a single employer. It is seldom, if ever, that all the employees of an employer are members of a single union. Moreover, except where the employees of one employer are small in number, rarely is one union the bargaining representative for all the employees of a single employer [8]. To say that Sec. 302(c) (5) required the rules and regulations governing a trust fund should provide benefits for all the employees of a given employer would have made impossible the existence of any such trust fund. Prior to the passage of the Act, benefits of a trust fund were restricted to members of the labor organization whose bargaining power was instrumental in the creation of the fund. In the absence of a clear intent on the part of Congress, which was thoroughly aware of the situation as it existed prior to the Act, to make a change in this respect, it is not improper for the union to provide as one of the conditions for an employee to receive benefits from such fund that he be a member of the union at the time benefits become due. See Van Horn v. Lewis et al., D.C.D.C., 1948, 79 F.Supp. 541, 543, 544. Such a provision does not deviate from the requirement that the fund shall be for the benefit of the "employees of [the] employer".

■ There can be no dispute that the fund, which is actually money earned by the employee-members, must be used for their sole and exclusive benefit. The only question that can arise on this point is whether the fund under consideration may be legally used for another purpose. If it can, the fund, of course, may not be looked upon in view of the Act as one of trust. Plaintiff's by-laws and regulations do not in terms provide that the fund shall not be used for any other purpose than for the employee-members' benefit. But the by-laws and regulations, which may be changed almost at will by the Board of Trustees, are not decisive on this point. By a provision in the supplemental agreement, which is the controlling document here, the plaintiff agreed to extend the benefits of the fund to the employee-members in accordance with the rules and by-

---

[7] It was because of this argument that the Attorney General of the United States was notified and the United States was permitted to intervene in this action in accordance with Sec. 2403, Title 28 U.

S.C.A. Also see Rule 24(b) of the Federal Rules of Civil Procedure.

[8] See Section 101(a, b) of the Act, 29 U.S.C.A. § 159(a, b).

laws under which the fund is administered. Consequently, the use of the fund for a purpose other than that designated in, would be violative of, the supplemental agreement, relieving the employer-parties from making further contributions, independent of the provisions of the Act.

In consideration for plaintiff's handling of all the administrative details at its own expense, the company, which insures plaintiff's members, has agreed to return any surplus fund which might accrue as the result of a favorable loss experience after deducting from the total premiums received all cost and expenses chargeable under the policy or policies and an amount sufficient to build up a contingency fund[9]. Defendant points this agreement out as a possible avenue over which the Board of Trustees might divert a portion of the fund to plaintiff's own use. When this surplus fund is returned, if ever, and after the Board of Trustees has reimbursed itself for administrative expenses, it is subject to all the conditions of the supplemental agreement placed upon plaintiff's Social Security Department. The mere possibility for diverting funds for purposes foreign to the collective bargaining agreement will not cause a breach of the agreement; there must be actual diversion. The existence of the latter does not appear from the facts revealed by the pleadings.

Union welfare or trust funds, as far as case law is concerned, is something new in the law. Despite the rarity of decisions involving them however, the benign light in which the courts will view them has already appeared on the horizon. As seen in United Garment Workers of America v. Jacob Reed's Sons et al., D.C. E.D.Pa., 83 F.Supp. 49, at page 52: "The Court considers such funds as rather sac-red, and it is the purpose of the law that they be available when due under the contract". Therefore, whenever the trustees use, or attempt to use, directly or indirectly, the fund for a purpose other than for the sole and exclusive benefit of the employee-members, this court, when called upon, will enjoin the trustees from making the improper expenditure. The burdening of the fund with undue administrative expenses or lush salaries for union officials will not be tolerated; excessive restrictions, either in the insurance policies or the by-laws and regulations, or the providing of small benefits to the employee-members in proportion to the amount contributed by the employee-parties or the premiums paid, taking into consideration the risk involved, will cause more than a lifting of the eyebrows. A provision in the by-laws or regulations denying the employee-members the right to resort to the courts to protect their beneficial interest in the fund is of no legal effect. If such a provision appears in the collective bargaining agreement or is permitted by it, which is not the case here, the fund can not properly be called a trust fund.

From the foregoing we cannot say that the fund in question is not a trust fund, and since it meets the requirements of subsections (c) (5), (c) (5) (A) and (g) of Section 302 of the Act, it need not comply with the provisions of subsection (c) (5) (B). This result makes unnecessary the discussion of the constitutional questions raised.

Accordingly, unless within thirty days from the date of this opinion defendant amends its answer to raise the issue of plaintiff's breach of the supplemental agreement, the plaintiff's motion for judgment on the pleadings and for summary judgment will be allowed.

---

[9] This contingency fund is held for the credit of plaintiff and upon the termination of the insurance plan, it would be returned to the plaintiff for distribution to the employee-members.