In the Matter of JACK TOWNSEND, as President of Bartenders Union of New York City, Local No. 15, Petitioner. ALFRED J. BOHLINGER, as Superintendent. of Insurance of the State of New York, Respondent.

Supreme Court, Special Term, New York County, March 2, 1954.

*Harold L. Luxemburg* for petitioner.

*Nathaniel L. Goldstein, Attorney-General* (*Samuel A. Hirshowitz* of counsel), for respondent.

CORCORAN, J. During the course of an investigation by the State Superintendent of Insurance into the affairs of welfare and pension trust funds which were created for the benefit of members of labor unions in this State, subpœnas were served on the Bartenders Union Welfare Trust Fund and the United RLD Bartenders Trust Fund directing that their business rec-

ords for the past three years be produced before the superintendent. The president of the Bartenders Union of New York City, Local No. 15, moves to vacate and annul the subpœnas. Subsequent to the making of this application to vacate, the superintendent had other subpœnas served on some of the trustees of the two funds requiring their personal appearances before him in the same investigation, and calling for the production of substantially the same records as the original subpœnas. The superintendent states in his memorandum that he has no objection to having this application also relate to the subpœnas served on the trustees. The union officials make no mention of them, however, and none of the trustees have intervened in regard to them. They are, therefore, not before the court and they are not considered on this application.

In his answer, the superintendent represents to the court that the purpose of his investigation is to determine whether there have been violations of the Insurance Law, and to ascertain what recommendations should be made to the Legislature for new legislation in regard to such funds. He claims that the investigation is being conducted for the benefit and protection of labor union beneficiaries.

Labor unions are exempt from the provisions of the Insurance Law (§ 466) except that the superintendent is authorized to require information from a union which will assist him in determining whether it has exempt status (Insurance Law, § 466, subd. 3). There are several other exceptions which need not now be discussed, for the union in this case has exempt status, and the superintendent so acknowledges.

Not only does the superintendent make no claim of a right of inquiry under any of the exceptions contained in the Insurance Law, but he states in his answer that he " has not attempted and does not desire at this stage of his investigation to examine into the affairs of the Bartenders Union, Local No. 15, or to inspect in any way its books and records." He also advises us that he has no interest in what the union does with its own money which it denominates strike funds, defense funds, etc.; that those are funds of its own over which it has complete jurisdiction; and that he has no present interest in the disposition of such moneys. His contention is that section 466 is no bar to his present investigation because the welfare and trust funds in this case are separate and distinct entities from the union, and his investigation is of the funds, and not of the union.

The union disputes the superintendent's theory of separability. Its contention is that the union welfare fund and the union

are one, and that any attempt by the superintendent to examine the books of the fund is a violation of the Insurance Law. The union makes it clear that it does not contend that the books of the funds are secret or beyond the law. The books are regularly audited by certified public accountants. Reports are sent to employer associations and the international union. Copies are available to employee members and to employers, and the State Department of Labor is kept informed of the details of the plans for the funds under the Disability Benefits Law (Workmen's Compensation Law, art. 9).

The union brochure for the five-year period from 1948 to 1953 and the collective bargaining agreements of the union support the conclusion that the welfare funds are owned and operated independently of the union.

Each fund has nine trustees. Three are appointed for the union; three for the employers' association; and three for the independents. Once the trustees have been designated, they have complete control over the funds and operate them independently.

There are two types of collective bargaining agreements used by the union. One is with the United Restaurant Liquor Dealers of Manhattan Inc. (which will be called the " United Agreement "). The other is for use with individual employers (which will be called the " Individual Agreement "). Both provide that the employers shall make their contributions to the funds, rather than to the union.

The fact that the funds are supported by employer contributions does not of itself make these funds independent of the union any more than the fact that the ultimate beneficiaries are union members make them union funds. Neither fact has anything to do with title or control. The important fact is that the contributions are made, not to the union, but to the funds and that the trustees have title to these funds.

Paragraph 22 of the United Agreement describes the fund as one maintained and operated under the terms and provisions of an indenture of trust in which it is provided that it is to " be managed and administered as a separate Trust by a Joint Board of Trustees, equally representative of the Union and the Association, in accordance with the provisions of said Trust and the rules and regulations adopted by the Trustees thereunder." Paragraph 22 further provides that the administration and management of the fund and the kind and amount of insurance and other benefits to be provided shall be solely in accordance with the rules, regulations and provisions which the joint board

of trustees may from time to time establish or adopt. The trustees are given the power to make such changes, modifications, additions or abrogations as they may deem advisable from time to time. Paragraph 22 concludes, as follows: " All expenses in connection with the collection of contributions to the said Fund and in connection with the administration and management of the said Fund shall be borne by the Fund." Paragraph 23 of the agreement provides that no employer and no union member shall have any right, title or interest in the fund or any claim against it. Paragraph 25 provides that the trustees shall undertake a study to place the fund plan on a sound financial basis and it authorizes them (not the union), to order an increase in employer contributions. The Individual Agreement, in other language, contains provisions identical in effect with those of the United Agreement.

The union points to article XVI of its by-laws as some evidence that the funds are union funds. Authorization for the union to participate in such funds is not evidence of title. As a matter of fact, the article does no more than authorize the executive board to set up and continue " trust funds to be administered by Trustees under an Indenture of Trust ".

That the union intended to make the welfare funds independent of it is apparent from the statement in its reply affidavit that in regard to them, it wanted to " comply with the spirit as well as the letter " of section 302 of the Labor Management Relations Act, 1947. That section (U. S. Code, tit. 29, § 186) requires a " trust fund " and that payments to it are to be " held in trust ". It also provides for administration by a joint board of trustees. Insofar as an examination of the funds is necessary for the purposes of this application, they appear to follow the requirements of that section. The union apparently intended that they should. In *Van Horn* v. *Lewis* (79 F. Supp. 541, 545) a trust under this section was described as a " beneficial charitable trust ". The court emphasized the same independent nature of these funds in *Upholsterers' Int. Union of North America* v. *Leathercraft Furniture Co.* (82 F. Supp. 570) saying at page 575: " As seen in United Garment Workers of America v. Jacob Reed's Sons et al., D. C. E. D. Pa., 83 F. Supp. 49, at page 52: ' The Court considers such funds as rather sacred, and it is the purpose of the law that they be available when due under the contract.' * * * A provision in the by-laws or regulations denying the employee-members the right * * * to protect their beneficial interest in the fund is of no legal effect. If such a provision appears in the collective

bargaining agreement or is permitted by it, which is not the case here, the fund can not properly be called a trust fund."

The trustees are holding the assets of the funds for the individuals who are the beneficiaries. They are not holding them for the employers' association, the individual employers, or the union. The trust records are their records. Any decision based on a finding or assumption that the records belonged to someone other than the trustees would, in effect, contradict the intention of the parties manifested in the trust indentures and the collective bargaining agreements.

The application is denied.