THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* SOL CILENTO, GEORGE SCALISE and ANTHONY CARFANO, Alias AUGIE PISANO, Defendants.

Court of General Sessions of County of New York, May 16, 1955.

*Louis A. Valente* and *Myron J. Greene* for Sol Cilento, defendant.

*Abraham H. Brodsky* for George Scalise, defendant.

*Harold H. Corbin* and *Francis B. Delehanty, Jr.,* for Anthony Carfano, alias Augie Pisano, defendant.

*Frank S. Hogan, District Attorney* (*Alfred Scotti* of counsel), for plaintiff.

GOLDSTEIN, J. The defendants, who have been indicted for the crimes of conspiracy (Penal Law, § 580), and bribery of labor representatives (Penal Law, § 380), have moved for an inspection of the grand jury minutes and for a dismissal of the indictment upon the ground that the evidence before the grand jury is insufficient to support the indictment for the crimes charged therein.

Each of the sixteen counts of the indictment, dealing with bribery, charges that defendant Cilento, being a duly appointed representative of a labor organization, to wit, a trustee of the Social Security Fund of the Distillery, Rectifying and Wine Workers' International Union of America (A. F. of L.) and secretary-treasurer of said union, solicited, agreed to accept and did accept moneys from one Louis Saperstein, upon an understanding that Cilento should be influenced in respect of his acts, decisions and other duties as such representative. The other defendants are charged with having aided and abetted Cilento in the commission of the crime of bribery.

Stripped to its essentials, the indictment charges that defendant Cilento, in addition to being secretary-treasurer of the union, was one of the trustees of the social security fund which was an employee welfare fund, financed by employer contributions, and administered by a board of six trustees, three designated by the union and the other three by employers; that the social security fund administered programs of accident, health and life insurance for the benefit of employees who were members of the union; that the trustees were empowered and under a duty to make arrangements for such insurance; that Cilento and his co-trustees entered into contracts for such insurance with an insurance company through Louis Saperstein, as the broker; that Saperstein received commissions on the premiums paid by the welfare fund trustees; that Cilento, aided and abetted by the other two defendants, solicited and accepted from Saperstein a portion of those commissions, which payments were designed to influence Cilento's acts as such trustee.

Subdivision 2 of section 380 of the Penal Law (which became effective on September 1, 1953), makes it a misdemeanor for a duly appointed representative of a labor organization to solicit, or accept or agree to accept from any person, any money or property " upon any agreement or understanding, express or implied, that he shall be influenced in respect to any of his acts, decisions, or other duties as such representative ". Strangely enough, until the enactment of subdivision 2 of section 380 in 1953, only the giver of a bribe to a representative of a labor organization was guilty of a crime under subdivision 1 of that section. In 1941, in the case of *People* v. *Graf* (261 App. Div. 188), a conviction was reversed where it was attempted to charge a union representative with accepting gratuities from an employer under the provisions of section 439 of the Penal Law. That prosecution failed because it was held, among other things, that a labor organization was not a " business " and therefore section 439 was inapplicable. (*Supra*, p. 189.) Justice CALLAHAN, in his opinion, said: " If the Legislature intended to make the receipt of a gratuity by a labor representative a crime, it would seem likely that it would do so by a simple amendment inserting such a provision in section 380, and not rely on a general statute relating to ' business and trade ' to create such prohibition." (*Supra*, p. 190.)

Despite this warning by the court, nothing was done toward amending section 380 until the enactment of chapter 675 of the Laws of 1953, which added the matter upon which the instant indictment is based. The impetus came from the disclosures

developed by the New York State Crime Commission concerning the activities of union officers of the International Longshoremen's Association.

The problem presented by this motion is novel and simply stated is: Can it be said that Cilento in receiving payments from Saperstein to influence the placing of the social security fund insurance was being bribed to affect his acts, decisions or other duties as a representative of a labor organization? Or does the evidence show that his acts, decisions or duties as a trustee of the welfare funds were being influenced? In the former case a crime is made out, in the latter, no matter how morally or ethically reprehensible the conduct may be, our Legislature has not yet seen fit to make it a crime. The courts have been admonished against extending penal statutes by decision (*People* v. *Levy,* 283 App. Div. 383). To declare acts criminal is the sole function of the Legislature.

To differentiate between Cilento as a labor representative and Cilento as a trustee of a welfare fund is real and not illusory. As a trustee, Cilento would have a voice in placing the insurance for the welfare fund. As secretary-treasurer of the union he would have no such power. The Labor Management Relations Act, 1947 (Taft-Hartley Act, U. S. Code, tit. 29, § 186) gave governmental sanction to the creation of welfare fund provisions in collective bargaining agreements. It authorized employee welfare funds established by contributions from employers, to be administered by trustees designated by both management and labor. Section 186 labeled such funds as " trust " funds and directed that the contributions thereto be " held in trust." Vesting authority in trustees was to insure a complete absence of domination or control by unions or employers.

That such trustees are distinct entities, bound to no one, except to conform to the provisions of the trust agreement and to the great principles of equity which control the actions of all trustees, has been established in the few decisions which have been rendered in the short time that welfare funds have become more prevalent. The Federal courts have held that union welfare funds are trust funds and are governed by the laws relating to trustees (see *United Garment Workers* v. *Jacob Reed's Sons,* 83 F. Supp. 49; *Upholsterers' Int. Union* v. *Leathercraft Furniture Co.,* 82 F. Supp. 570, and *Van Horn* v. *Lewis,* 79 F. Supp. 541).

In a recent decision (*Matter of Townsend* [*Bohlinger*], 206 Misc. 619), where a labor union unsuccessfully attempted to

prevent the State superintendent of insurance from examining the records of welfare trust funds on the ground that the union and the fund were one unit, the late Justice CORCORAN stated (p. 623) : "The trustees are holding the assets of the funds for the individuals who are the beneficiaries. They are not holding them for the employers' association, the individual employers, or the union." So, too, in *United Marine Division* v. *Essex Transp. Co.* (216 F. 2d 410), it was held that trustees of a welfare fund designated by an employees' union cannot be regarded as representative of the employees. The court there said (p. 412) : "These trustees were not, in our judgment, representatives of the employees. They were trustees of a welfare fund. It is true they were chosen half and half by the employers' association and this union. But we think that when set up as a board, as they were in this case, these individuals are not acting as representatives of either union or employers. They are trustees of a fund and have fiduciary duties in connection therewith as do any other trustees."

It thus abundantly appears that trustees of a welfare fund are not, as such, agents or representatives of a union but distinct and independent legal entities, even though such trustees may simultaneously be officers of a union. This court cannot ignore this distinct separation of entities and treat the two as one. Public policy, as expressed in the Taft-Hartley Act and in the decisions above cited, dictates that the complete independence of union welfare funds be maintained. To find that in this case the distinct entities merge would in the end result tend to thwart the overriding public policy of complete independence.

Subdivision 2 of section 380 of the Penal Law, as it may apply to union designees as trustees of welfare funds, has hitherto not been passed upon by the courts. Because of the views expressed herein as to the distinction between a trustee of a welfare fund and a representative of a labor organization, even though both offices reside in the same person, the validity of the present indictment should be decided at the threshold.

My task would be much easier if I denied the motion and passed on to the trial judge the decision on the law applicable to the indictment. But it is my duty to decide the issue on this motion. Moreover, it is proper to consider that a denial of the motion to dismiss could not be reviewed by the defendants except after a trial and conviction, while the People have the right to an immediate appeal.

In deciding that defendants' acts do not fall within the language or intent of subdivision 2 of section 380 of the Penal Law,

I cannot leave even the slightest impression that the acts charged here were not morally reprehensible and ethically indefensible and did not violate the duty of undivided loyalty which a trustee owes. Unfortunately, a trustee, except when he commits larceny (Penal Law, § 1302), is not chargeable with crime for violating his trust. At present, the law merely subjects the trustee to a surcharge in the civil courts and makes him account for unlawful gains. The rapid growth of welfare funds in recent years has placed untold millions in the hands of trustees, charged with the duty of protecting the beneficiaries who look to these funds for benefits. Recent disclosures of abuses in the administration of such funds have resulted in studies looking to statutory regulation. I do not think it amiss on my part to suggest that the Legislature enact regulations with penal sanctions to prevent situations such as are alleged in the instant case and to punish offenders.

Since this court cannot legislate in the guise of interpreting a statute, nor extend its scope to include acts not encompassed in its language, I must grant the motion to dismiss the indictment since I conclude that Cilento's acts were those of a trustee, and not as a labor representative. The conspiracy count must fall, too, since it is based upon the same acts alleged in the bribery counts. Submit order.