**FORMAN FOOD SERVICE CORP., Plaintiff,**

v.

**PROVISION SALESMEN AND DISTRIBUTORS UNION LOCAL 627, affiliated with Amalgamated Meat Cutters & Butcher Workmen of North America, AFL–CIO, et al., Defendants.**

**No. 75 Civ. 3605.**

United States District Court, S. D. New York.

Oct. 8, 1975.

**14**

Marshall, Bratter, Greene, Allison & Tucker, New York City, for plaintiff; Richard L. Bond, Howard P. Roy, New York City, of counsel.

Waldman & Waldman, New York City, for defendants; Seymour M. Waldman, New York City, of counsel.

## OPINION AND ORDER

KEVIN THOMAS DUFFY, District Judge.

This is an action for a declaratory judgment and a preliminary injunction. Jurisdiction is premised upon Section 302(e) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 186(e).

At a hearing held before me both sides conceded that no issues of fact exist and plaintiff orally moved for summary judgment. All that remains are questions of law which have been thoroughly briefed by the parties. Although I find that summary judgment is appropriate,

it is the defendants who are entitled to this relief.

The absence of a formal cross motion by defendants does not preclude my granting summary judgment on my own motion. *See Abrams v. Occidental Petroleum Corp.,* 450 F.2d 157, 165–66 (2d Cir. 1971), *aff'd sub nom. Kern County Land Co. v. Occidental Petroleum Corp.,* 411 U.S. 582, 93 S.Ct. 1736, 36 L.Ed.2d 503 (1973); *Petroleo Brasileiro v. Ameropan,* 372 F.Supp. 503 (E.D.N.Y.1974).

The plaintiff complains that contractually required payments to the Union's Welfare Trust Fund and Pension Trust Fund may be in contravention of the LMRA. Thus, the corporation considers itself faced with the dilemma of either violating the Act or breaching its contract. The trusts have existed unchallenged in their present form for well over twenty years.[*]

Section 302(a) of the LMRA, 29 U.S.C. § 186(a), restricts the nature and manner of employer payment to labor organizations. Subdivision (c)(5) excludes

"money or other thing of value paid to a trust fund established by such representative, for the sole and exclusive benefit of the employees of such employer, . . . *Provided,* . . . employees and employers are equally represented in the administration of such fund . . . ."

It is conceded that no employer representatives are trustees of either of the Union's trusts.

The Union urges that both trusts come within the exemption provided for in Section 302(g)

"Compliance with the restrictions contained in subsection (c)(5)(B) of this section upon contributions to trust funds, otherwise lawful, shall not be

---

[*] In his opposing affidavit, Morris Horn, Chairman of the Board of Trustees of the Welfare and Pension Trust Funds, notes that no suggestion has been made that the Funds have been improperly administered. He further argues that this suit is an attack by one out of 350 employer-contributors who is vindictive over a work stoppage that took place at the Forman plant from February 1 to mid-April 1975. The work stoppage is alleged to have occurred partially over the plaintiff's unsuccessful efforts to rid itself of the Welfare and Pension Funds. Considerations of this type are totally irrelevant to the question at hand.

applicable to contributions to such trust funds established by collective agreement prior to January 1, 1946 . . . .."

The employer's own "Exhibit A" is a collective bargaining agreement between Barnet Brodie, Inc. and the defendant Union dated December 4, 1945. Article VI thereof requires employer payments to the Union's Disability Relief & Benefit (DRB) Fund. It appears that some employer payments were recorded as early as November 1945. The case law is clear that post-1946 contributions even by new employers do not destroy an otherwise valid exemption. *Fur Dressers Union v. Fur Dressers Guild*, 87 F.Supp. 400 (D.C.N.Y.); *Upholsterers' Union v. Leathercraft Furn. Co.*, 82 F.Supp. 570 (E.D.Pa.1949).

It is the employer's contention that any exemption which might have existed was lost in 1951 when the Disability Relief Fund was bifurcated into the Welfare Trust Fund and the Pension Trust Fund. The change was made so as to comply with LMRA § 302(c)(5)(C), 29 U.S.C. § 186(c)(5)(C), requiring a separate trust for pension payments. Thus, I am faced with the question of whether the 1951 modification destroyed what I find to be an otherwise valid exemption. Case law on this issue is non-existent. The inquiry is essentially of a *sui generis* nature: are the trust funds a direct continuation of a trust established by a pre-1946 collective bargaining agreement?

The 1945 collective bargaining agreement with Barnet Brodie, Inc. simply indicates that the funds are to be applied "to the welfare objectives for which it is intended." Although the original trust instrument only provided for payment of disability benefits, it was the intention of the Union from the fund's inception to include pension benefits. A December 10, 1945 article in the *Trade Union Courier* quoted the then Secretary of the Local as follows: " 'We hope . . . that this fund will also include a retirement plan in the next few years.' "

On October 23, 1951, the Executive Board of the Local resolved as follows:

"that the Agreement and Declaration of Trust dated October 23, 1951 is adapted [sic] and recognized as an *amendment to and continuation of* the Trust created under the Constitution and By-Laws of the Fund." (emphasis added).

Following the resolution, the names on the fund's bank accounts, treasury bond and the like were changed.

The preamble to the 1951 trusts expressly referred to them as a necessary fulfillment of pre-1946 collective bargaining agreements. For all of these reasons, I find that the Welfare and Pension Trusts are "trust funds established by collective bargaining agreements prior to January 1, 1946 . . ." Therefore, they are exempt under Section 302. The preliminary injunction is denied and the complaint is dismissed.

IT IS SO ORDERED.