THE PEOPLE OF THE STATE OF NEW YORK, Appellant, *v.* SOL CILENTO, GEORGE SCALISE and ANTHONY CARFANO, Alias AUGIE PISANO, Respondents.

First Department, February 24, 1956.

[redacted]

*Richard G. Denzer* of counsel (*Sidney M. Fruhling* with him on the brief; *Frank S. Hogan, District Attorney*), for appellant.

*Myron J. Greene* of counsel (*Louis A. Valente,* attorney), for Sol Cilento, respondent.

*Jacob Shientag* of counsel (*Abraham Brodsky,* attorney), for George Scalise, respondent.

*Francis B. Delehanty, Jr.,* of counsel (*Harold H. Corbin* with him on the brief; *Corbin, Bennett & Delehanty,* attorneys), for Anthony Carfano, respondent.

RABIN, J. Defendants were indicted for bribing a labor representative (Penal Law, § 380), and conspiracy in connection therewith (Penal Law, § 580). The former section prohibits a representative of a labor organization taking a bribe for the purpose of influencing his " acts, decisions, or other duties as such [union] representative ". The pertinent portion of that section (subd. 2) provides: " Any duly appointed representative of a labor organization who solicits or accepts or agrees to accept from any person any money, property or other thing of value upon any agreement or understanding, express or implied, that he shall be influenced in respect to any of his acts, decisions, or other duties as such representative, or upon any agreement or understanding, express or implied, that he shall refrain from causing or shall prevent a strike or work stoppage or any form of injury to any business is guilty of a misdemeanor."

The indictment under section 380 of the Penal Law was dismissed and as a consequence the indictment under section 580 of the Penal Law for conspiracy was likewise dismissed. The People appeal from such dismissal.

The defendant Cilento was the secretary-treasurer of the Distillery, Rectifying, Wine and Allied Workers' International

Union of America. Pursuant to the authority created by the Taft-Hartley Act (Labor Management Relations Act, 1947) (U. S. Code, tit. 29, § 186) there was established a welfare fund to which employers were to make contributions pursuant to collective bargaining agreements made with the union. In accordance with the Federal statute the welfare fund was to be administered by trustees, three of whom were to be appointed by the union and three by the employers. Cilento became one of the trustees by virtue of his position as secretary-treasurer of the union. The trustees were to administer the fund and procure insurance in connection with the administration of a program for accident, health and life insurance for the beneficiaries.

The proof before the Grand Jury established that Cilento and his cotrustees entered into contracts for insurance through Louis Saperstein, a broker. Saperstein testified that over a period of years large sums of money were paid to Cilento and the other defendants in return for letting Saperstein place the insurance. The indictment charges that these sums of money were paid to Cilento as a bribe to influence his acts, decisions and other duties as a union representative. The other defendants were charged with having aided and abetted Cilento in the commission of the crime.

Prior to the enactment of subdivision 2 of section 380 of the Penal Law, a labor representative could not be found guilty for accepting bribes given for the purpose of influencing his actions. It was only the giver of the bribe who could be guilty under subdivision 1 of that section.

The disclosures of the New York State Crime Commission investigating the activities of union officers of the International Longshoremens' Association revealed that labor representatives had been bribed by employers to influence their activities in connection with the relations between the union and the employers. It was to cure this evil and evils associated with it that subdivision 2 of section 380 of the Penal Law was enacted.

The question presented on this appeal is whether Cilento in accepting a bribe in his capacity as a trustee of the welfare fund falls afoul of the provisions of that section.

The court below in a well-considered opinion (207 Misc. 914) held that section 380 was not applicable inasmuch as Cilento, when functioning as a trustee — though holding that office by virtue of his being the secretary-treasurer of the union — was not acting as a representative of his labor organization within the meaning of the section. The decisions construing the status of

a labor designee acting as a trustee of a welfare fund seem to support that conclusion (*United Mar. Div., I. L. A., Local 333, A. F. of L.,* v. *Essex Transp. Co.,* 216 F. 2d 410, 412; *United States* v. *Ryan,* 225 F. 2d 417). In the *United Marine Division* case (p. 412) it was said: "These trustees were not, in our judgment, representatives of the employees. They were trustees of a welfare fund. It is true that they were chosen half and half by the employers' association and this union. But we think that when set up as a board, as they were in this case, these individuals are not acting as representatives of either union or employers. They are trustees of a fund and have fiduciary duties in connection therewith as do any other trustees." Thus, a clear line of demarcation is drawn between one's duties as a trustee of a welfare fund and his duties as an official of a labor union. Moreover, it was the clear intent of the Congress that the welfare funds authorized by the Taft-Hartley Act were to constitute distinct and separate funds free from any control or interference on the part of the union or its officials (*United States* v. *Ryan, supra; Matter of Townsend [Bohlinger]*, 206 Misc. 619). In the *Townsend* case the court said (p. 623): "The trustees are holding the assets of the funds for the individuals who are the beneficiaries. They are not holding them for the employers' association, the individual employers, or the union."

The spirit of the act which permitted the creation of welfare funds impels the conclusion that when one assumes the obligations of a trustee of a welfare fund, and acts in that capacity, he does not do so as a representative of a union although he may be designated by the union. His sole obligation is to the fund. To hold otherwise would mean that should there be a conflict between the interests of the union and the best interests of the welfare fund as such, the union designee would be obliged to vote and act in the union's interests rather than in the interest of the fund. If charged with violating his duties as a trustee it would be no defense for the designee of a union to say he acted upon the instructions of his union. To hold that a union designee acts for the union rather than as a trustee is to give the union a hold on the fund, thus doing violence to the spirit that prompted the creation of these funds.

As stated by the court below the distinction between the position of a union representative and a trustee of a welfare fund is "real" and not illusory. It would put a premium on partisan action if we were to hold that as a trustee a labor official must act in the interests of his union rather than in the interest of

the fund. Partisanship in a trustee is repugnant to our concept of a trustee's duties. Accordingly, I believe that the court acted properly in finding that if a bribe were taken by Cilento he did not take it for the purpose of influencing his acts as a union representative within the meaning of section 380 of the Penal Law. It is urged however, that it was because of his position as secretary-treasurer of the union that Cilento was able to dominate the fund and do the acts with which he is charged. Certainly in no circumstances did he have the sole right to control the fund. His position as secretary-treasurer of the union gave him no greater rights than those possessed by the other trustees. If the other trustees permitted him, because of his union position, to control their acts, they were remiss in their duties.

No matter how reprehensible Cilento's conduct may have been the indictment may not stand if his acts do not come within the four corners of the statute, for that statute must be strictly construed (*People* v. *Benc,* 288 N. Y. 318). There should be some means of punishing one committing an offense such as that with which Cilento is charged, but unless we do violence to the salutory separation of a welfare fund from a union, we may not punish under this section of the law.

Significant is Governor Harriman's memorandum in vetoing a bill that was passed by the New York State Legislature in 1955 with respect to the regulation of welfare funds. He said: "No provision is contained in the bill permitting the authorities to deal with any evils which may be uncovered. There is no prohibition in the bill against a union officer having an interest in an insurance agency, brokerage firm or insurer, or against sharing commissions. The bill permits Trustees to avoid the usual consequences for misconduct." (New York State Legislative Annual for 1955, p. 475.)

Implicit in the Governor's statement is a recognition that there is nothing in the existing laws to prevent malfeasance by a trustee in dealing with welfare funds.

As stated, section 380 of the Penal Law was not enacted to cover a situation such as this. It was aimed to correct the abuses of employers in bribing union officials in the course of their dealings. That is clearly apparent from the second half of that section which makes reference to causing and preventing strikes and work stoppages. However, in arriving at the conclusion that this section does not apply to trustees of a welfare fund, we have looked beyond the purpose for which the section was enacted to see if, despite that special purpose, the offense

charged here does not come within it. We find that it does not. Accordingly, the order dismissing the indictment should be affirmed.

Bastow, J. (dissenting). In my opinion, the lower court erred in dismissing the indictment charging defendants with one crime of conspiracy and sixteen crimes of bribery in violation of section 380 of the Penal Law. It appears from the Grand Jury minutes that defendant Cilento was secretary-treasurer of the Distillery, Rectifying, Wine and Allied Workers International Union of America from its inception in 1940 until his resignation in 1954. The constitution of the union defined the powers and duties of his office. It was provided, among other things, that " [b]y virtue of his office " he was " a member of the Board of Trustees with the Social Security Department."

This department was created by the union in 1947 pursuant to the provisions of section 302 of the Labor Management Relations Act, 1947 (U. S. Code, tit. 29, § 186), the so-called Taft-Hartley Act. The constitution of the union further provided for the establishment of a social security fund to administer programs of accident and health insurance and provisions for death benefits, covering employees who are members of the union. Pursuant to trust agreements between the International Union and the employers, each of the collective bargaining agreements entered into between local unions and employers provided for a percentage payment to the fund. The fund was to be administered by a board of six trustees, three appointed by the union and three by the employers. Actually, only one trustee of the three union trustees was so appointed. The constitution of the International Union provided that the general president thereof should become chairman of the board of trustees and was authorized to appoint one other trustee and, as heretofore stated, defendant Cilento, by virtue of his office as general secretary-treasurer, became the third labor trustee.

It appears, from testimony before the Grand Jury, that both before and for many years after the establishment of this social security fund, Cilento, through a series of agreements and nefarious schemes with third persons, including the broker, who obtained the insurance for a named company, received large sums of money. It would serve no useful purpose to detail here the evidence given before the Grand Jury. It is sufficient to summarize the activities of defendants by stating that before the Grand Jury the insurance broker testified that, during the last three years of the existence of this alleged bribery con-

spiracy, some $300,000 was paid to defendants Cilento and Carfano (Pisano) "so that * * * (the insurance broker) could continue to secure and retain the insurance on the Liquor Union."

The pertinent portion of subdivision 2 of section 380 of the Penal Law provides that " [a]ny duly appointed representative of a labor organization who solicits or accepts or agrees to accept from any person any money, property or other thing of value upon any agreement or understanding, express or implied, that he shall be influenced in respect to any of his acts, decisions, or other duties as such representative * * * is guilty of a misdemeanor." Each of the bribery counts in the indictment, that has been dismissed, charges that " being a duly appointed representative of a labor organization, to wit, a trustee of the Social Security Fund " of the International Union and secretary-treasurer of the International Union the defendant, Cilento, solicited, accepted and agreed to accept from the insurance broker a specified sum of money upon an agreement that Cilento should be influenced in respect to " his acts, decisions, and other duties as such representative."

The lower court, in dismissing the indictment, based its decision upon the narrow point that, because the insurance fund was administered by a special board of trustees, Cilento, who occupied the dual positions of officer of the union and trustee of the fund, was not acting in his capacity of representative of the union but in his position as trustee of the fund. The conclusion was reached that, since such a trustee is not a " duly appointed representative of a labor organization ", the alleged bribetaking of Cilento was not prohibited by the statute.

I am unable to agree with such a narrow and unrealistic interpretation of section 380. Cilento held his position as trustee not by appointment but ex officio, by virtue of being the secretary-treasurer of the International Union. He did not function as a normal independent trustee but served as such solely because he was a representative of the union. In the event he accepted bribes, he did so as a trustee who was at the same time representing his union. Moreover, and quite aside from his duties as trustee, Cilento had an independent duty as officer of the union to report to the members any evidence of bribery or wrongdoing on the part of any officer. Upon the evidence here presented, a jury might find that the statute was violated by the bribes paid to Cilento so that he, as an officer of the union, would be influenced not to report to the members that excessive brokerage commissions were being paid by the insur-

ance company to provide a fund for the payment of bribes — an excessive commission that cost the union members approximately $250,000 annually.

The People should have a full opportunity to present all of the facts upon a trial. A jury might well find that the bribes paid to Cilento, with the aid and assistance of the other two defendants, Scalise and Pisano, were taken by him as a representative of a labor organization to influence his duties as such.

The order dismissing the indictment should be reversed and the indictment reinstated.

Cox and FRANK, JJ., concur with RABIN, J.; BASTOW, J., dissents and votes to reverse in opinion in which PECK, P. J., concurs.

Order affirmed.