**UNITED ELECTRICAL, RADIO AND MACHINE WORKERS OF AMERICA (U.E.) AMALGAMATED LOCAL 259, et al., Plaintiffs, Appellants,**

v.

**WORTHINGTON CORPORATION (HOLYOKE WORKS), Defendant, Appellee.**

No. 5083.

United States Court of Appeals First Circuit.

Heard April 5, 1956.

Decided July 31, 1956.

Allan R. Rosenberg, Boston, Mass., for appellants.

Francis J. Vaas, Boston, Mass., with whom Robert D. Hartshorne, Jr., Thomas F. Fennell II, New York City, and Ropes, Gray, Best, Coolidge & Rugg, Boston, Mass., were on brief, for appellee.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

MAGRUDER, Chief Judge.

Plaintiffs in this civil action seek specific enforcement of an arbitration award, money damages, and a declaratory judgment. The complaint named as plaintiffs a labor union local, the collective bargaining representative for employees of defendant Company at its plant in Holyoke, Mass.; the president of the Union, suing on behalf of the members thereof, who were alleged to be too numerous to join as parties; and two individual members of the Union, Frank F. Parker and C. Herbert Salter, suing on their own behalf. The complaint as amended alleges that the individual plaintiffs are citizens of Massachusetts and that all the employee members of the plaintiff Union are citizens of Massachusetts or of Connecticut. The defendant is a Delaware corporation, employing members of the Union at Holyoke, Mass., in an industry affecting commerce. At all relevant dates in this case, plaintiff Union and defendant Company were parties to a collective bargaining agreement the material terms of which will be stated below.

On April 15, 1954, defendant discharged Salter and notified Parker that he would be discharged on June 1, 1954. The reason assigned for the discharges, in a statement read to each was "harmful publicity affecting the Company and the tension and unrest created among the employees in connection with your appearance before the Sub-Committee of the House Un-American Activities Committee at Albany on April 9th * * *." The statements indicated that the Company might reconsider its action if the employees in question asked to be heard again by the committee in order to clear their records. It appears from stories published in a Holyoke newspaper during the preceding week that at the Albany hearing Parker and Salter were accused of being Communists, that Salter while testifying invoked the Fifth Amendment in response to questions relating to his alleged membership in the Communist Party and to Communist influence in the Union, and that Parker, who had been subpoenaed but was not required to take the stand, chose not to testify before the committee.

On April 27 the Union invoked the grievance provisions of the collective bargaining agreement with respect to these discharges by filing a written "Grievance Record." The Grievance Record is a form printed in multiple copies, with spaces provided for indicating the details of grievance, the management decision at each step, and Union agreement or disagreement with each such decision. The grievance procedure in the contract is a conventional four-step system, but the Grievance Record in this case indicates that the parties immediately waived the first three steps so as to go directly to top-level conference. Under the caption "Details of Grievance," the Union stated in the Grievance Record:

"The Company has unfairly and in violation of the Contract between this Union and Worthington Corp. introduced arbitrary new conditions for continued employment of its workers. Under the new working conditions introduced unilaterally by Company and not negotiated with the Union, C. Herbert Salter has been suspended and Frank Parker has been put on verbal notice of suspension. The Union asks the Salter's suspension be lifted and that he be paid of all time lost at his average pay as a result of the Company's action and the Frank Parker's notice of suspension be rescinded." [sic]

Two substantive provisions of the collective agreement are relevant to the grievance thus asserted. In one the Company recognizes plaintiff Union "as the sole and exclusive collective bargaining agency" for the employees covered by the contract. In the other, it was agreed that "The Management of the plant and direction of the working force is vested exclusively in the Company, including * * * the right to * * * discharge for proper cause, * * * subject to the terms of this agreement."

No agreement having been reached between the Union and Company repre-

sentatives under the grievance procedure, the Union by letter dated May 11, 1954, invoked the arbitration provision of the contract, which was as follows:

"In the event that the two parties to this Agreement fail to make satisfactory adjustment of any dispute arising under this Agreement, such dispute * * * shall be referred to a Board of Arbitration * * *. The Board of Arbitration shall not have the right or authority to add to, subtract from, or alter any of the provisions, nor shall it have jurisdiction over matters not included in this Agreement."

At the arbitration hearing, which took place in October, 1954, the Company maintained that the grievance was not arbitrable and that the Board of Arbitration had no jurisdiction with respect to it, but it participated in the hearing on the merits, stating that such participation was without waiver of its position respecting arbitrability and jurisdiction. Both sides called witnesses, introduced documentary evidence, and subsequently submitted briefs.

The chairman and the Union arbitrator concurred in an opinion and award on February 4, 1955, with the Company arbitrator issuing a dissenting opinion. The majority decision ruled that the dispute was arbitrable and not beyond the jurisdiction of an arbitration tribunal, that the discharges of Parker and Salter were not justified under the contract, and that they should be reinstated with back pay.

Upon the refusal of the Company to carry out this award, the present suit was brought. The central allegation of the complaint is that the refusal to comply with the award was a violation of the contract, particularly the provision that: "A decision reached by any two members of the Board shall be binding on both parties to this Agreement." Jurisdiction was alleged to lie under § 301 of the Labor Management Relations Act, 61 Stat. 156, 29 U.S.C.A. § 185, as to plaintiff Union and under the diversity jurisdiction (28 U.S.C. § 1332) as to all the plaintiffs. The relief demanded was a decree for specific performance of the arbitration award, plus additional money damages and a declaratory judgment of the rights of the parties.

Defendant moved for summary judgment on the grounds that the Board of Arbitration had no jurisdiction to decide the matter submitted to it and that the district court has no jurisdiction over the subject matter. The motion was allowed and the complaint dismissed, the district court's Memorandum of Decision, 136 F.Supp. 31, indicating that the single ground for decision was that exclusive jurisdiction over the dispute, as the district court found it to have been framed by the Union, was in the National Labor Relations Board. The appeal by all the plaintiffs from this dismissal is here under 28 U.S.C. § 1291.

Defendant's contentions on this appeal are that the written Grievance Record established the scope of the dispute submitted to arbitration, that the statements in this Grievance Record were equivalent to a charge of refusal to bargain in violation of § 8(a) (5) of the Labor Management Relations Act, 61 Stat. 141, 29 U.S.C.A. § 158(a) (5), and therefore that jurisdiction over the dispute could lie only in the National Labor Relations Board. On the other hand, plaintiffs contend here that the scope of the dispute was not solely defined by the terms of the Grievance Record, that neither the Grievance Record nor the Union position as subsequently stated framed the dispute in terms of an unfair labor practice, and that, even if the dispute partly or entirely involved an unfair labor practice, the jurisdiction of the National Labor Relations Board was not exclusive if the same facts also amounted to a breach of contract.

It will be seen, then, that the difference between the parties largely turns upon the application to this case of what has come to be known as the "pre-emption" doctrine, a concept developed through a series of Supreme Court decisions in the field of labor relations under both the original Wagner Act and the Taft-Hart-

ley Act. The part of the doctrine pertinent here stems from the holding of Garner v. Teamsters, Chauffeurs and Helpers Local Union, 1953, 346 U.S. 485, 74 S.Ct. 161, 98 L.Ed. 228, that union conduct which might be an unfair labor practice under § 8(b) could not be enjoined by a state court. The entire development is summarized in Weber v. Anheuser-Busch, Inc., 1955, 348 U.S. 468, 474–477, 75 S.Ct. 480, 99 L.Ed. 546, whose holding was expressed in these words:

> "But where the moving party itself alleges unfair labor practices, where the facts reasonably bring the controversy within the sections prohibiting these practices, and where the conduct, if not prohibited by the federal Act, may be reasonably deemed to come within the protection afforded by that Act, the state court must decline jurisdiction in deference to the tribunal which Congress has selected for determining such issues in the first instance." 348 U.S. at page 481, 75 S.Ct. at page 488.

Aside from cases involving violence, e. g., United Automobile, Aircraft & Agricultural Implement Workers v. Wisconsin Employment Relations Board, 1956, 351 U.S. 266, 76 S.Ct. 794, the only exception to the present strict doctrine that has appeared was a case permitting a compensatory state tort remedy not available from the National Labor Relations Board, United Construction Workers v. Laburnum Construction Corp., 1954, 347 U.S. 656, 74 S.Ct. 833, 98 L.Ed. 1025. It now seems to be established that, the violence cases aside, the basis of the doctrine is the actual or potential conflict with NLRB adjudication that could arise were other tribunals to be permitted concurrent jurisdiction with duplicating remedies. See Weber v. Anheuser-Busch, Inc., supra, 348 U.S. at pages 479–481, 75 S.Ct. at pages 487–488; United Construction Workers v. Laburnum Construction Corp., supra, 347 U.S. at pages 663–665, 74 S.Ct. at pages 836–838; Garner v. Teamsters, Chauffeurs and Helpers Local Union, supra, 346 U.S. at page 491, 74 S.Ct. at page 166. Where the conditions for invoking the doctrine are found, the pre-emption or preclusion of jurisdiction applies, not only to state courts and administrative agencies, but also to the federal courts, Amazon Cotton Mill Co. v. Textile Workers Union, 4 Cir., 1948, 167 F.2d 183, and to arbitration tribunals, see Matter of Allen B. Dumont Laboratories, Inc., Sup.Ct.1951, 154 N.Y.S.2d 394.

However, there has not yet been a Supreme Court decision involving the jurisdiction of a court or arbitrator over acts constituting a contract violation as well as an unfair labor practice. Such a situation may arise where the contract forbids discrimination by the company for union activities, as does § 8(a) (3) of the federal Act, or where, as may be the case here, the breach of contract alleged is a violation of the universally used contract term recognizing the union as collective bargaining agent, which may also be a refusal to bargain under § 8(a) (5). There are a few decisions approving concurrent jurisdiction of courts with the National Labor Relations Board in such cases. Independent Petroleum Workers v. Esso Standard Oil Co., 3 Cir., 235 F.2d 401; see Textile Workers Union v. Arista Mills Co., 4 Cir., 1951, 193 F.2d 529, 533–534; Reed v. Fawick Airflex Co., Inc., D.C.N.D.Ohio 1949, 86 F.Supp. 822, 823–824. But cf. cases cited in Note, 69 Harv.L.Rev. 725, 728–29 (1956).

With respect to arbitrators, as distinguished from courts, a narrower position concerning the application of the pre-emption doctrine is possible. Since the basis of the doctrine is the risk of diversity or conflict of remedies, it may be that the Supreme Court will make an exception to application of the doctrine in circumstances where the National Labor Relations Board declines to act or shapes its relief to the existence of the other forum. Since § 10(a) of the Act provides that the power of the NLRB to prevent unfair labor practices "shall not be affected by any other means of adjustment or prevention that has

been or may be established by agreement, law, or otherwise", 61 Stat. 146, it has been held that neither* the existence of an agreement to arbitrate nor a rendered award can preclude the Board from exercising its statutory jurisdiction. E. g., N. L. R. B. v. Walter Disney Productions, 9 Cir., 1945, 146 F.2d 44; N. L. R. B. v. International Union, United Automobile, Aircraft and Agricultural Implement Workers, 7 Cir., 1952, 194 F.2d 698. But cf. Timken Roller Bearing Co. v. N. L. R. B., 6 Cir., 1947, 161 F.2d 949. Nevertheless, the National Labor Relations Board has developed certain policies whereby, in the exercise of its discretionary power, it declines to act on an unfair labor practice charge, either because an arbitral forum is available or an award has been made. E. g., Crown Zellerbach Corp., 95 N.L.R.B. 753 (1951); Spielberg Mfg. Co., 112 N.L.R.B. 1080 (1955). A recent analysis of the Board cases concludes that exercise of this discretion depends on the type of unfair labor practice charged, the fairness and adequacy of the arbitration process in question, and the willingness of the respondent before the Board to be bound by the arbitration decision. See Note, 69 Harv.L.Rev. 725, 731–36 (1956). Defendant in the instant case has emphasized to us that those cases in which the NLRB has deferred to an arbitrator were one in which the party charged with the unfair labor practice was willing to submit the dispute to arbitration, in contrast to the position of defendant with respect to this arbitration. Assuming that the Board policy has been so limited in the past, it is possible that its rationale reaches, and that hence it will be extended by the Board to, cases where a legal process exists for compelling the respondent to arbitrate. After all, it is only recently that many of the federal courts have been coming to recognize a power to compel arbitration under collective bargaining agreements. E. g., Local 205, United Electrical, Radio and Machine Workers v. General Electric Co., 1 Cir., 1956, 233 F.2d 85; Signal-Stat Corp. v. Local 475, United Electrical, Radio and Machine Workers, 2 Cir., 235 F.2d 298.

And where the Board would decline to exercise its statutory jurisdiction in deference to an available arbitral remedy, the basis for the pre-emption doctrine largely disappears, and it seems only logical that in such a case the lawful jurisdiction of the arbitrator be recognized. See Note, "Jurisdiction of Arbitrators and State Courts Over Conduct Constituting Both a Contract Violation and an Unfair Labor Practice," 69 Harv.L. Rev. 725, 736–37 (1956); cf. Garner v. Teamsters, Chauffeurs and Helpers Local Union, 1953, 346 U.S. 485, 488, 74 S.Ct. 161, 98 L.Ed. 228. Furthermore, without reference to such an analysis of the effect of the Board policy on the pre-emption doctrine, it has been argued, as noted, that the pre-emption doctrine does not preclude jurisdiction in a tribunal other than the NLRB where the action complained of constitutes a breach of contract as well as an unfair labor practice. E. g., Independent Petroleum Workers v. Esso Standard Oil Co., 3 Cir., 235 F.2d 401. See also H.R.Conf.Rep. No. 510, 80th Cong., 1st Sess. 52 (1947).

In either form, the question of application of the pre-emption doctrine to the arbitration situation is a difficult one for a lower federal court at this time. This is necessarily so whenever such a court is called upon, without definite statutory guidance, to apply a principle developed in a series of Supreme Court decisions to a new factual context. If the solution also depends on a reflection of NLRB policy, which itself may not be fully crystallized with respect to the most recent court decisions, then the decision here becomes doubly a matter of prediction. In the instant case we do not find it necessary to enter upon that hazardous undertaking, because we do not analyze the facts of this case as presenting a direct example of a charge of conduct constituting both an unfair labor practice and a contract breach.

We do not agree with the district court that the Grievance Record shows "that the gravamen of the union's complaint is

the introduction of new working conditions without negotiation with the union," and that in its subsequent presentation to the arbitrators "the union has chosen to make the alleged refusal to bargain an essential element of its argument that the suspension and discharge of Parker and Salter was improper." It will be recalled that the "Details of Grievance" written on the Grievance Record, the document which initiated the grievance proceedings leading to the arbitration, read as follows:

> "The Company has unfairly and in violation of the Contract between this Union and Worthington Corp. introduced arbitrary new conditions for continued employment of its workers. Under the new working conditions introduced unilaterally by Company and not negotiated with the Union, C. Herbert Salter has been suspended and Frank Parker has been put on verbal notice of suspension. The Union asks the Salter's suspension be lifted and that he be paid of all time lost at his average pay as a result of the Company's action and the Frank Parker's notice of suspension be rescinded." [sic]

It is true that the cause of discharge is characterized there not only as "arbitrary" but as "new" and as having been "introduced unilaterally * * * and not negotiated." But the latter allegations could well appear in any charge of an arbitrarily-imposed ground for dismissal at least for the purpose of showing lack of notice to the workers involved and lack of prior acquiescence by the Union in the use of that ground.

A unilateral change of conditions of employment can become the basis for a refusal to bargain charge, as in Inland Steel Co. v. N. L. R. B., 7 Cir., 1948, 170 F.2d 247, 12 A.L.R.2d 240, where the company refused to discuss the matter after, as well as before, imposing the change. In the instant case, the Union does not appear to have been seeking strongly in the grievance procedure to negotiate in a general way over the imposition or terms of the so-called new condition of employment, but rather it sought to remedy the particular action of the discharge of Parker and Salter. That much the Company did not refuse to bargain over; it participated in the grievance procedure as requested. No doubt it had a statutory duty to discuss the discharges, regardless of their cause, see National Licorice Co. v. N. L. R. B., 1940, 309 U.S. 350, 360, 60 S.Ct. 569, 84 L.Ed. 799 but there could be no unfair labor practice in discharging those men on any ground (aside from union activity, which was not involved), however arbitrary or however much in breach of contract such ground was alleged to be, see N. L. R. B. v. Jones & Laughlin Steel Corp., 1937, 301 U.S. 1, 45–46, 57 S.Ct. 615, 81 L.Ed. 893.

The Grievance Record, while it fairly implies an intent to press the arbitrary discharge aspect of the grievance, does not fully negative an intent to complain as well about the failure to consult with the Union in advance of establishing this condition of employment. However, the record of the case in the district court amply shows the Union emphasis upon the discharges as the heart of the grievance, and we cannot accept defendant's contention that the question for arbitration was to be determined solely from the three-sentence statement in the Grievance Record. Perhaps that would be so as to the factual scope of the arbitrable dispute, that is, the incidents being complained of; but certainly that brief preliminary statement could not have been expected to bind the Union as to the scope of the legal theory or contract basis upon which it would present the case. The record shows, in letters by Union counsel prior to the arbitration, in colloquies between counsel and testimony at the hearings, and in the post-hearing briefs, that the Union laid considerable emphasis upon the argument that the contract in existence did not authorize the discharge of Parker and Salter for the reasons relied on by the Company, completely aside from the Company's

failure to consult with the Union in advance.

Indeed, as we read the crucial clause of the collective agreement, that may have been the only sound argument the Union could make. The contract stated that management powers were "vested exclusively in the Company, including * * * the right to * * * discharge for proper cause, * * * subject to the terms of this Agreement." This language may well mean that the Company had a right to act unilaterally in the first instance on a discharge question, subject to review subsequently through the grievance and arbitration obligations of the agreement. The contract terms seem to have been significantly different in the recent case of United Electrical, Radio and Machine Workers v. General Electric Co., D.C.Cir., 1956, 231 F.2d 259, wherein it was held that a dispute over unilateral imposition of a similar policy simply charged a violation of the duty to bargain and hence was a dispute within the exclusive primary jurisdiction of the NLRB. There are also other differences between the two cases, as shown by the opinion and extracts from the record in that case submitted to us by the parties here.

At the very least, the situation in the instant case consisted of a presentation by the Union of two issues for grievance processing and arbitration, or two grounds for charging that the same action of the Company was wrongful. One such issue or ground, the failure to consult the Union in advance, may be a question pre-empted to the jurisdiction of the NLRB; the other, the dismissal of two employees without cause under the contract, clearly was not subject to NLRB jurisdiction. Certainly the pre-emption doctrine should not lift from the jurisdiction of other tribunals cases which the NLRB cannot lawfully decide (where there is no doubt that the case is outside the bounds of the Board's statutory jurisdiction). If that is not so, there would be an area of conduct under a labor agreement that is "entirely ungoverned." Cf.

International Union, U. A. W. A., A. F. of L., Local 232 v. Wisconsin Employment Relations Board, 1949, 336 U.S. 245, 254, 69 S.Ct. 516, 93 L.Ed. 651. And likewise in a case involving two issues or grounds charging that the same action is wrongful, and the two types of misconduct are easily separable for the purpose of adjudication, pre-emption of one should not effect a pre-emption of the other so as to leave the latter aspect of alleged misconduct "entirely ungoverned." On this basis, a few state courts have ruled that arbitrators have jurisdiction in discharge cases involving both allegations of personal discrimination and of discrimination for union activity, the arbitrator's jurisdiction running only to the personal unfairness alleged, with the other aspect deemed to be reserved for the NLRB. Post Publishing Co. v. Cort, Mass.1956, 134 N.E.2d 431; Matter of Allen B. Dumont Laboratories, Inc., Sup.Ct.1951, 154 N.Y.S.2d 394; McAmis v. Panhandle Eastern Pipe Line Co., Mo.App.1954, 273 S.W.2d 789. The case before us is even stronger for such a ruling because not only the legal theory upon which wrongdoing is charged, but some factual elements of what occured, would differ as between the incident of the alleged refusal to bargain in advance and the incident of alleged contractual violation in the discharges themselves. Cf. Textile Workers Union v. Arista Mills Co., 4 Cir., 1951, 193 F.2d 529, 534.

■ Therefore we conclude that the arbitrators in the present controversy had jurisdiction over the allegation that the discharges were not for just cause under the contract, even though it be assumed for the moment that the Union was also presenting an allegation of refusal to bargain before imposing a new condition of employment, which latter assertion may be a matter for exclusive cognizance by the NLRB. The majority decision of the arbitrators in fact passed only upon the wrongful discharge aspect of the case and turned aside the refusal to bargain aspect. Although we make

this note of the arbitrators' ruling on their own jurisdiction, we have not accepted that ruling as conclusive, but have made the independent analysis of their jurisdiction outlined above. Cf. Local 205, United Electrical, Radio and Machine Workers v. General Electric Co., 1 Cir., 1956, 233 F.2d 85, 101; Post Publishing Co. v. Cort, Mass.1956, 134 N.E. 2d 431, 434; Farson v. United Press Associations, Sup.Ct.1956, 154 N.Y.S.2d 741.

■ Our conclusion just stated, that the arbitrators had jurisdiction over the dispute submitted to them in this case, is intended to be responsive only to what was decided in the judgment appealed from, namely, that their jurisdiction was precluded in favor of the NLRB. This was the only issue argued before us. The motion for summary judgment had also asserted that the district court itself lacked jurisdiction over the plaintiffs' complaint, but the court below in its disposition of the case did not reach this issue. We noted earlier in this opinion that the gravamen of the complaint was the allegation that the Company had committed a breach of the provision in the collective bargaining agreement that "A decision reached by any two members of the Board [of Arbitration] shall be binding on both parties to this Agreement." Thus, on the record before us, taking into account the allegations as to the citizenship of the individual plaintiffs and of the members of plaintiff Union, it seems that there is diversity jurisdiction as to all parties, and also federal jurisdiction under § 301 of the Taft-Hartley Act as to plaintiff Union alone. Local 205, United Electrical, Radio and Machine Workers v. General Electric Co., 1 Cir., 1956, 233 F. 2d 85, 89–94, 102; Milk and Ice Cream Drivers and Dairy Employees Union v. Gillespie Milk Products Corp., 6 Cir., 1953, 203 F.2d 650; Copra v. Suro, 1 Cir., 1956, 236 F.2d 107. Jurisdiction to grant the particular remedies of the Declaratory Judgments Act, 28 U.S.C. §§ 2201–2202, and the United States Arbitration Act, 9 U.S.C. § 1 et seq., is expressly made dependent in those two Acts upon the existence of an underlying ground of federal jurisdiction. Although § 9 of the Arbitration Act is not applicable here, see Goodall-Sanford, Inc., v. United Textile Workers, 1 Cir., 1956, 233 F.2d 104, 105, the district court has the power to afford the remedies sought under the jurisdictional bases invoked in this breach of contract action. See Hyman v. Pottberg's Executors, 2 Cir., 1939, 101 F.2d 262, 266.

Though we have examined the record to ascertain that the basic jurisdiction of the district court existed, upon remand it will be open to the defendant to assert particular jurisdictional objections, such as those it raised in a motion to strike portions of the complaint, which were not passed on by the district court or argued upon this appeal. In addition, it will be open to defendant, which has not yet filed its answer, to raise other defenses appropriate to an action for the enforcement of an arbitration award. It is for the district court to pass upon all such points in the first instance, in the light of the relevant authorities, including our recent decisions in Local 205, United Electrical, Radio and Machine Workers v. General Electric Co., supra, Goodall-Sanford, Inc., v. United Textile Workers, supra, and Copra v. Suro, supra.

The judgment of the District Court is vacated and the case is remanded to that court for further proceedings not inconsistent with this opinion.