374

In the Matter of the Arbitration of the
TYPO–PUBLISHERS OUTSIDE
TAPE FUND.
Thomas G. S. CHRISTENSEN,
Petitioner-Appellant,
New York Typographical Union No. 6
et al., Union, Union-Trustees-
Appellants,
v.
NEW YORK TIMES COMPANY et al.,
Employers, Employers-Trustees-
Appellees.
Nos. 514, 515, Docket 72–2118, 72–2183.

United States Court of Appeals,
Second Circuit.

Argued March 6, 1973.

Decided May 15, 1973.

Constantine P. Lambos, New York City (Lorenz, Finn, Giardino & Lambos and Jacob Silverman, New York City, on the brief), for petitioner-appellant.

Gerhard P. Van Arkel, Washington, D. C. (Van Arkel & Kaiser, Washington, D. C., Stephen C. Vladeck and Vladeck, Elias, Vladeck & Lewis, New York City, on the brief), for appellants New York Typographical Union No. 6 and Bertram Powers and David Crockett.

John J. Stanton, Jr., New York City, for New York Times Co. and John Bogart, employer trustee.

Sidney Orenstein, New York City, for New York Post Corporation and Leonard Arnold, employer trustee.

Before LUMBARD and TIMBERS, Circuit Judges, and WYZANSKI, District Judge.*

PER CURIAM:

These are consolidated appeals from a judgment of the Southern District, 344 F.Supp. 194 (1972), denying arbitrator Thomas G. S. Christensen's petition for a declaratory judgment that certain payments from the jointly administered "Typo-Publishers Outside Tape Fund" (the "Fund") did not violate section 302 of the Labor Management Relations Act of 1947, 29 U.S.C. § 186. In 1970 the trustees representing the New York Typographical Union Local No. 6 (the "Union") proposed the payment of benefits from the Fund to employees of any employer having a collective bargaining contract with the Union, irrespective of whether the employer had made contributions to the outside tape fund. The trustees representing the *New York Times* and the *New York Post* opposed this plan, arguing that under the collective bargaining agreements, the trust agreement, and section 302 of the Labor Management Relations Act only former or present employees of the *Times* and the *Post* could receive benefits from the Fund.

* Of the District of Massachusetts, sitting by designation.

Under the terms of the trust agreement the dispute was submitted to arbitration before Thomas G. S. Christensen, who determined that the collective bargaining agreements and the trust agreement authorized payments from the Fund to employees of non-contributing employers. The arbitrator, pursuant to the submission, then petitioned the district court for a ruling as to the legality of such payments under section 302(c)(5). From the district court's denial of the petition the arbitrator and the Union, together with Bertram Powers and David Crockett, the two Union-trustees, have appealed.

The factual background of the dispute is fully set out in the opinion below and need not be repeated here. The only question on appeal is the narrow one of whether the district court erred in its determination that section 302(c)(5) of the Labor Management Relations Act of 1947 prohibits the payment of benefits from the Fund to employees of non-contributing employers. We agree with the district court that section 302 does prohibit such payments.

Section 302(a), 29 U.S.C. § 186(a) makes it "unlawful for any employer . . . to pay, . . . or agree to pay, . . . any money or other thing of value—

> (1) to any representative of any of his employees who are employed in an industry affecting commerce; . . ."

Section 302(c)(5) excepts from the prohibition of section 302(a) payments by employers to trust funds established for certain specified purposes if the trust is "for the sole and exclusive benefit of the employees of such employer . . ." Appellee newspaper publishers and employer-trustees contend that the clear import of this language is that only employees whose employers contribute to a qualified section 302(c)(5) trust can lawfully receive benefits from the trust.

Appellants, citing Bey v. Muldoon, 223 F.Supp. 489 (E.D.Pa.1963), aff'd, 354 F.2d 1005 (3 Cir.), cert. denied, 384 U.S.

987, 86 S.Ct. 1888, 16 L.Ed.2d 1004 (1966), argue that "any employee in the newspaper industry whose employer is a signatory to a collective bargaining agreement with the Union is an employee within the meaning of section 302(c)(5), and eligible to receive benefits under the [plan]."[1] They assert that the purpose of section 302 was not to eliminate the type of payments at issue here, but to prevent employers from tampering with the loyalties of union officials and to assure that the money deducted from an employee's wages for payment to a union trust fund would not become unrestricted property of the Union, but would be used to benefit the employees whose labor was responsible for the employer contributions. See, e. g., Bey v. Muldoon, supra; I Legislative History of Labor Management Relations Act of 1947, 458; II Legislative History of Labor Management Relations Act of 1947, 1311, 1498. But see Copra v. Suro, 236 F.2d 107, 115 (1 Cir. 1956).

While it may be that Congress in enacting section 302 did not intend to prohibit the type of trust fund at issue here, this court is bound, nonetheless, by the express statutory language that only payments by an employer to a "trust fund . . . for the sole and exclusive benefit of the employees of such employer . . ." are exempt from the general prohibitions of section 302. Where several employers have agreed in negotiations with a union to set up a section 302 trust for the benefit of union members, it is clear beyond cavil that "[o]nly employees and former employees of employers who are lawfully contributing to [the] union . . . trust fund may qualify as beneficiaries." Moglia v. Geoghegan, 403 F.2d 110, 116 (2 Cir. 1968), cert. denied 394 U.S. 919, 89 S.Ct. 1193, 22 L.Ed.2d 453 (1969). Accord Rittenberry v. Lewis, 238 F. Supp. 506 (E.D.Tenn.1965); Bolgar v. Lewis, 238 F.Supp. 595 (W.D.Pa.1960).

1. Brief of appellant Christensen at page 16.

Appellants nevertheless urge that the term "employer" in section 302(c)(5) should be taken to refer to all those newspaper publishers having collective bargaining contracts with the Union. Their argument is based in large measure on the decision of Judge Lord in Bey v. Muldoon, supra. Judge Tyler dealt fully with this contention and no purpose would be served in repeating the district court's analysis here. It suffices to point out that the result in *Bey* rested on the peculiar nature of the use of longshoremen on the Philadelphia waterfront; the longshoremen worked for the "waterfront" rather than for any particular stevedoring company. It is apparent from the record developed here that, unlike the Philadelphia longshoremen, the vast majority of typographical workers at the *Times* and the *Post* are employees of one newspaper employer. Thus *Bey* is not persuasive authority for the contention of appellants.

Affirmed.

WYZANSKI, Senior District Judge (dissenting):

The majority opinion and the opinion of District Judge Tyler have a strong basis for their conclusions. Literally, the statute is plainly, unambiguously opposed to the trust fund at issue.

But it is equally clear that the Congressional purpose was solely to prevent an employer from paying funds into a union welfare fund, or the like. The Congressional reports and the Congressional Record are replete with references to abuses, or at least plans, involving payments to funds which union leaders could manage for a variety of different purposes and not necessarily for the immediate and exclusive use of those with whom employees chose to be in a common fund of mutual support. See, for example, S.Rep. No. 105, on S. 1126, 80 Cong. 1st Sess. (1947); H.R.Rep. No. 245, on H.R. 3020, 80th Cong., 1st Sess. (1947); House Conf. Rep. No. 510 on H.R. 3020 (1947); 93 Cong.Rec. 4157, 4679–4680, 4746–4747, 4875–4884, 5494–5496, 7501 (1947).

However, a careful reading of the primary and other sources by counsel and the court has not uncovered any expressions of opinion, hostile or otherwise, by Senators, Congressmen, witnesses, or others with respect to the type of plan here involved. We have no ground to suppose that, in general, Congress has been unsympathetic with pooling of employees' unemployment, pension, and like funds which treat all employees in an industry, or section thereof, as having such a common interest that they become, by their own free choice, mutual self-insurers.

Moreover, such a mutual support system has particular relevance to an industry, or section thereof, where the pattern of collective bargaining is as wide as the industry or a geographical or other broadly drawn section and where there is, if not identity of interest, a least a strong common bond against a common danger which may manifest itself almost haphazardly against some but not against others, and without any predictability.

Nor is it easy to discern what could be a public objection to allowing employers and employees who on a wholly voluntary basis, as in the case at bar, wished to enter into such a bargain, to execute their purpose. No one is the loser if all want to pool risks under such a self-insurance scheme.

Thus the question is whether to disregard the letter of the statute, and to hold it inapplicable because the challenged conduct is not within the reason of the statute. This raises a familiar issue. Theoretically little can be added to the classic authorities on the subject. United States v. Carbone, 327 U.S. 633, 66 S.Ct. 734, 90 L.Ed. 904; see Holy Trinity Church v. United States, 143 U.S. 457, 12 S.Ct. 511, 36 L.Ed. 226. Lynch v. Overholser, 369 U.S. 705, 710, 82 S.Ct. 1063, 8 L.Ed.2d 211.

In my view those authorities point to the desirability in this case of disregarding the letter of the prohibition and al-

lowing the parties to carry out their agreement to which, so far as we are informed, there is no objection founded on declared or undeclared, discoverable or undiscoverable, alleged or implied, public policy.